This opinion was filed for record
at 8-00 am on April 7, 2016

Susan L. Carlson
Acting Clerk
Supreme Court Clerk

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF
WASHINGTON
APR 0 7 2016
DATE_____

Madsen, C.J.
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN DOE A, a minor, by and through his legal guardians, Richard Roe and Jane Roe; and JOHN DOE B, a married man, as individuals and on behalf of others similarly situated, | ) ) ) ) ) ) | No. 90413-8 |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| WASHINGTON STATE PATROL, an agency of the State of Washington; and DONNA ZINK, a married woman, | ) ) ) ) ) | |
| Appellants. | ) ) ) | |
| | ) | En Banc |
| JOHN DOE C, a minor, by and through his legal guardians, Richard Roe C and Jane Roe C; JOHN DOE D, a minor, by and through his legal guardians, Richard Roe D and Jane Roe D; JOHN DOE E; and JOHN DOE F, as individuals and on behalf of others similarly situated, | ) ) ) ) ) ) ) ) ) | |
| Respondents, | ) ) ) | |
| v. | ) ) ) | Filed: APR 0 7 2016 |
| WASHINGTON ASSOCIATION OF SHERIFFS AND POLICE CHIEFS, | ) ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) ) | |

No. 90413-8

DONNA ZINK, )
)
Appellant. )
)
_____ )

MADSEN, C.J.—At issue is whether RCW 4.24.550, a community notification statute relating to registered sex offenders, constitutes an "other statute" under the Public Records Act (PRA), chapter 42.56 RCW, that would exempt the blanket release of level I sex offender registration information from a PRA request. Appellant Donna Zink made several public records requests with the Washington State Patrol (WSP) and the Washington Association of Sheriffs and Police Chiefs (WASPC) for documents pertaining to level I registered sex offenders. Both the WSP and WASPC intended to grant her request, but the WASPC notified several of the John Does that their records had been requested. The John Does in turn filed suit to enjoin production of the records. The trial court granted the injunction. We granted direct review and now reverse the trial court. We hold that RCW 4.24.550, and specifically RCW 4.24.550(3)(a), is not an "other statute" exemption under RCW 42.56.070(1) of the PRA.

FACTS

Appellant Zink, a Washington resident, submitted three public records requests relating to sex offender registration information. The first request sought a copy of the WSP's "Sex and Kidnapping Offender Database." The second request sought e-mail correspondence between the WSP and Benton County for a specific period. The responsive records included an extract of the Sex and Kidnapping Offender Database.

2

The third request was to the WASPC for sex offender registration forms pertaining to offenders with a last name beginning with the letter "A" and sex offender registration files pertaining to offenders with a last name beginning with the letter "B." Both the WSP and WASPC were prepared to release the records to Zink. However, before doing so, the WASPC notified affected level I sex offenders—those classified as the least likely to reoffend—that their records had been requested and that it intended to fulfill the request absent a court order enjoining it from doing so.

These level I offenders, the John Does, filed two different class action lawsuits seeking to enjoin disclosure of their records to Zink. One lawsuit named the WSP and Zink as defendants. The other named the WASPC as the defendant and Zink as the "[r]equestor."[1] Clerk's Papers at 1641. The trial court consolidated the lawsuits.

---

[1] In the action against Zink and the WSP, the John Does sought certification of a "Class defined as . . . [a]ll individuals who are named in the [WSP's] Sex and Kidnapping Offender Database, classified at risk level I, and in compliance with the conditions of registry." Clerk's Papers at 1015. In the action against Zink and the WASPC, the John Does sought certification of a "Class defined as . . . [a]ll individuals who are named in sex offender registration forms or files prepared, owned, used or retained by the [WASPC] who have names that begin with the letters 'A' or 'B', who are classified at risk level I, and who are in compliance with the conditions of registration." *Id.* at 1646.

In the first action (against Zink and the WSP), the trial court certified a class defined as "[a]ll individuals who are named in the December 6, 2013 extract from the [WSP's] Sex and Kidnapping Offender Registry Database, classified at risk level I, and not designated in the status of 'fail to verify address' or 'fail to register upon release.'" *Id.* at 1608. In the second action (against the WASPC), the trial court certified a class defined as "[a]ll individuals with last names beginning with the letters 'A' or 'B' who are named in the March 25, 2014 extract from the [WASPC] database, classified at risk level I, and not designated in the status of 'fail to verify address' or 'fail to register upon release.'" *Id.* at 1619. It specifically noted in each order that "[t]he Defendant's ability to easily identify members of the Class would be enhanced if the Class were defined with reference to a particular date relative to the request at issue." *Id.* at 1607-08, 1619. On March 5, 2014, the trial court consolidated those lawsuits. *Id.* at 1591-93 (Ex. G).

3

The John Does sought a declaratory ruling that level I sex offender registration records are exempt from disclosure under the PRA because an "other statute" governs such requests. They also sought a permanent injunction to bar the blanket release of level I sex offender registration information. The John Does argued that RCW 4.24.550, the community protection act, which authorizes an agency's public dissemination of information regarding registered sex offenders, was an "other statute" under the PRA, thus exempting the records from production. The trial court granted the John Does' motion for summary judgment and permanent injunction. The court issued a declaratory ruling stating that "level I sex offender registration records are exempt from disclosure under [the PRA because] . . . RCW 4.24.550 provides the exclusive mechanism for public disclosure of sex offender registration records." *Id.* at 568. It further ruled that the

> WSP and WASPC may disclose "relevant and necessary" level I sex offender records in response to a request under RCW 4.24.550 by a member of the general public, after considering in good faith the offender's risk classification, the places where the offender resides or is expected to be found, and the need of the requestor to protect individual and community safety.

*Id.* at 568-69. The trial court clarified its injunctive order and ruled that "sex offender records" are

> the source documents submitted by local law enforcement agencies to the WSP, the WSP's Sex and Kidnapping Offender Registration Database (database), any extracts from the database, and names of the class members in emails, to or from employees of the WSP's Criminal Records Division, that relate to a source document or the database.

*Id.* at 628.

Zink and the WSP appealed directly to this court. The WASPC filed a brief supporting direct review. This court granted direct review, and we now reverse the trial court. We hold that RCW 4.24.550 is not an "other statute" under the PRA and that the records should have been released to Zink. We also hold that under the PRA and *Confederated Tribes of Chehalis v. Johnson*, 135 Wn.2d 734, 958 P.2d 260 (1998), Zink is not entitled to attorney fees, costs, or penalties.

ANALYSIS

Standard of Review

When an agency intends to release records to a requester under the PRA, an interested third party—to whom the records specifically pertain—may seek to enjoin disclosure. RCW 42.56.540; *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 34-35, 769 P.2d 283 (1989). In an action brought under the injunction statute, RCW 42.56.540, the party seeking to prevent disclosure, here the John Does, bears the burden of proof. *Ameriquest Mortg. Co. v. Office of Att'y Gen.*, 177 Wn.2d 467, 486-87, 300 P.3d 799 (2013) (*Ameriquest* II). We review actions under the PRA and the injunction statute de novo. RCW 42.56.550(3); *Spokane Police Guild*, 112 Wn.2d at 35. "Where the record consists only of affidavits, memoranda of law, other documentary evidence, and where the trial court has not seen or heard testimony requiring it to assess the witnesses' credibility or competency, we . . . stand in the same position as the trial court." *Dragonslayer, Inc. v. Wash. State Gambling Comm'n*, 139 Wn. App. 433, 441-42, 161 P.3d 428 (2007) (citing *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d

243, 252-53, 884 P.2d 592 (1994) (*PAWS* II) (plurality opinion). Furthermore, whether RCW 4.24.550 is an "other statute" for purposes of the PRA is a question of law that this court reviews de novo. *See Henne v. City of Yakima*, 182 Wn.2d 447, 453, 341 P.3d 284 (2015) (questions of statutory interpretation reviewed de novo).

The PRA and RCW 4.24.550

In 1972, the people enacted the PRA, formerly chapter 42.17 RCW, by initiative. *Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993). The public records portion was recodified at chapter 42.56 RCW. It is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The PRA's primary purpose is to foster governmental transparency and accountability by making public records available to Washington's citizens. *See City of Lakewood v. Koenig*, 182 Wn.2d 87, 93, 343 P.3d 335 (2014). The text of the PRA directs that it be "liberally construed and its exemptions narrowly construed . . . to assure that the public interest will be fully protected." RCW 42.56.030. We therefore start from the presumption that a state agency has "an affirmative duty to disclose public records." *Spokane Police Guild*, 112 Wn.2d at 36.

Despite the PRA's presumption of openness and transparency, the legislature has made certain public records exempt from production. Some of these exemptions are contained within the PRA itself. *See, e.g.*, RCW 42.56.210-.480 (listing specific exemptions). RCW 42.56.070(1) addresses exemptions contained elsewhere. In relevant part, it states that each agency "shall make available for public inspection and copying all

6

public records, unless the record falls within the specific exemptions of . . . this chapter, or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). An "other statute" that exempts disclosure does not need to expressly address the PRA, but it must expressly prohibit or exempt the release of records. *See, e.g., Ameriquest Mortg. Co. v. Office of Att'y Gen.*, 170 Wn.2d 418, 439-40, 241 P.3d 1245 (2010) (*Ameriquest* I) (federal Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, an "other statute" exempting covered information from PRA disclosure); *Hangartner v. City of Seattle*, 151 Wn.2d 439, 453, 90 P.3d 26 (2004) (attorney-client privilege is an "other statute" under what is now RCW 42.56.070(1) (formerly RCW 42.17.260) (1997)).

The "other statute" exemption "applies only to those exemptions explicitly identified in other statutes; its language does not allow a court 'to imply exemptions but only allows specific exemptions to stand'." *PAWS* II, 125 Wn.2d at 262 (quoting *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 800, 791 P.2d 526 (1990)). In *PAWS* II, we noted that the legislature made it very clear, following our holding in *In re Rosier*, 105 Wn.2d 606, 717 P.2d 1353 (1986), that it did not want this court creating exemptions where there were none. *PAWS* II, 125 Wn.2d at 258-59.

In *Rosier*, this court interpreted a portion of the PRA to imply a general personal privacy exemption. 105 Wn.2d at 611-14. The legislature responded swiftly by explicitly overruling *Rosier* and amending what is now RCW 42.56.070 to include the "other statute" exemption. *PAWS* II, 125 Wn.2d at 258-59; LAWS OF 1987, ch. 403, §§ 1,

7

3. In rejecting a broad reading of the PRA's injunction statute, former RCW 42.17.330 (2005) (now RCW 42.56.540), in *PAWS* II, we said that it did not

> make sense to imagine the legislature believed judges would be better custodians of open-ended exemptions because they lack the self-interest of agencies. The legislature's response to our opinion in *Rosier* makes clear that it does not want judges any more than agencies to be wielding broad and mal[l]eable exemptions. The legislature did not intend to entrust to . . . judges the [power to imply] extremely broad and protean exemptions . . . .

125 Wn.2d at 259-60. Therefore, if the exemption is not found within the PRA itself, we will find an "other statute" exemption only when the legislature has made it explicitly clear that a specific record, or portions of it, is exempt or otherwise prohibited from production in response to a public records request. The primary issue here is whether RCW 4.24.550, specifically RCW 4.24.550(3)(a), is an "other statute" under the PRA, which would exempt the blanket release of level I sex offender registration information in response to a public records request.

From its inception, RCW 4.24.550 has promoted the release of information. In 1990, the legislature found that "[o]verly restrictive confidentiality and liability laws governing the release of information about sexual predators [had] reduced willingness to release information that could be appropriately released under the public disclosure laws, and [had] increased risks to public safety," and passed the community protection act. LAWS OF 1990, ch. 3, § 116 (finding attached to RCW 4.24.550; *see* Code Reviser's notes). The legislature titled the first part of the act "Community Notification." LAWS OF 1990, ch. 3. Section 117 of that chapter became codified as RCW 4.24.550. The statute

provides authorization, guidance, and immunity to law enforcement agencies when proactively disseminating information about felony sex and kidnapping offenders to the public. Subsection (1) of the statute identifies the type of offender to whom the statute applies, and authorizes agencies to proactively disseminate information to the public regarding these offenders "when the agency determines that disclosure of the information is relevant and necessary to protect the public and counteract the danger created by the particular offender." RCW 4.24.550(1). The extent of what is "relevant and necessary" is "related to: (a) The level of risk posed by the offender to the community; (b) the locations where the offender resides, expects to reside, or is regularly found; and (c) the needs of the affected community members for information to enhance their individual and collective safety." RCW 4.24.550(2). Subsection (5) addresses what must be posted to a public website created and maintained by the WASPC. RCW 4.24.550(5). For offenders classified at risk levels II and III, and level I when they are out of compliance with registration requirements, "the website shall contain, but is not limited to, the registered sex offender's name, relevant criminal convictions, address by hundred block, physical description, and photograph." *Id.* The website will be searchable by county, name, zip code, and address by hundred block; it will also provide mapping capabilities. *Id.* The statute also provides immunity for officials and agencies "for any discretionary risk level classification decisions or release of relevant and necessary information" unless bad faith is shown, and "for failing to release information authorized under this section." RCW 4.24.550(7), (8). Especially relevant to this case, subsection (9) states that

9

"[n]othing in this section implies that information regarding [sex offenders] is confidential except as may otherwise be provided by law."

Subsection (3) sets forth guidelines an agency shall consider in determining the extent of what it chooses to disclose. RCW 4.24.550(3)(a), in particular, brings us to the core of this case. It reads:

> For offenders classified as risk level I, the agency shall share information with other appropriate law enforcement agencies and, if the offender is a student, the public or private school regulated under Title 28A RCW or chapter 72.40 RCW which the offender is attending, or planning to attend. The agency may disclose, upon request, relevant, necessary, and accurate information to any victim or witness to the offense and to any individual community member who lives near the residence where the offender resides, expects to reside, or is regularly found.[2]

RCW 4.24.550(3)(a). The John Does urge this court to read the "upon request" language of the statute to apply to a public records request, and by implication make RCW 4.24.550 the exclusive mechanism for producing sex offender records, exempting level I sex offender registration records from disclosure. We must now decide whether the "upon request" language, taken within the context of the statute as a whole, demonstrates a legislative intent to explicitly exempt certain sex offender records from production.

Our review of Washington case law shows that courts consistently find a statute to be an "other statute" when the plain language of the statute makes it clear that a record, or portions thereof, is exempt from production. Recently, in *Planned Parenthood of Great*

---

[2] After the records request was made, and prior to oral argument, the legislature amended RCW 4.24.550(3)(a) to add "and any individual who requests information regarding a specific offender." LAWS OF 2015, ch. 261, § 1(3). Because this section was not made retroactive, we consider the statute as it existed at the time the request was made. However, the new language would not change our result.

*Northwest v. Bloedow*, 187 Wn. App. 606, 623, 350 P.3d 660 (2015), the Court of Appeals held that RCW 43.70.050(2) was an "other statute" exempting the disclosure of Department of Health records of induced abortions for named health care providers because it was health care data in which the patient or provider could be identified. The statute expressly states that health care "data in any form where the patient or provider of health care can be identified shall not be disclosed, subject to disclosure according to chapter 42.56 RCW, discoverable or admissible in judicial or administrative proceedings." RCW 43.70.050(2).

In *Wright v. State*, the Court of Appeals found that the PRA did not apply to a request for juvenile justice records because chapter 13.50 RCW provided the "sole method for obtaining juvenile records under that chapter." 176 Wn. App. 585, 597, 309 P.3d 662 (2013); *see also Deer v. Dep't of Soc. & Health Servs.*, 122 Wn. App. 84, 92, 93 P.3d 195 (2004) ("chapter 13.50 RCW is an 'other statute' that 'exempts or prohibits' disclosure of particular documents to particular people"). That statute expressly provides that "[r]ecords covered by this section shall be confidential and shall be released only pursuant to this section and RCW 13.50.010." RCW 13.50.100(2).

In *Hangartner*, this court held that RCW 5.60.060(2)(a), which provides that "[a]n attorney or counsellor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment," was an "other statute." 151 Wn.2d at 453.

11

In *Ameriquest* I, 170 Wn.2d at 424, a lawyer requested documents from the attorney general's office that it had received from Ameriquest pursuant to an investigation. There, this court examined the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, and the relevant Federal Trade Commission rule, 16 C.F.R. § 313.11(c)-(d). *Id.* at 429-30. The statute provided that "the receiving nonaffiliated third party may not reuse or redisclose the nonpublic personal information to another nonaffiliated third party unless an exception applies or the reuse or redisclosure would be lawful if done by the financial institution." *Id.* at 426; 15 U.S.C. § 6802(c); 16 C.F.R. § 313.11(c)-(d). We held this was an explicit "other statute" and that the documents were not subject to a PRA request. *Ameriquest* I, 170 Wn.2d at 439-40.

This court last addressed the "other statute" exemption in *Fisher Broadcasting-Seattle TV LLC v. City of Seattle*, 180 Wn.2d 515, 326 P.3d 688 (2014). There, we considered whether RCW 9.73.090(1)(c), which directs that "[n]o sound or video recording [made by a dashboard camera] may be duplicated and made available to the public . . . until final disposition of any criminal or civil litigation which arises from the event or events which were recorded," was an "other statute." *Id.* at 525. We held that it was, and that dashboard camera videos were exempt from production until the litigation ended. *Id.* at 528.

In contrast, when a statute is not explicit, courts will not find an "other statute" exemption. In *Belo Management Services, Inc. v. Click! Network*, 184 Wn. App. 649, 653-54, 343 P.3d 370 (2014), five broadcasters sought to enjoin the disclosure of

unredacted retransmission consent agreements (RCAs) between themselves and Click!, a cable system owned by the city of Tacoma. The broadcasters claimed that federal regulation 47 C.F.R. § 0.459(a)(1) was an "other statute" under the PRA and exempted the RCAs from disclosure. *Id.* at 660. The Court of Appeals held that the regulations were not an "other statute" because they did not "specifically state that RCAs are confidential and protected from disclosure . . . . Rather, they allow a party to request that information submitted to the [Federal Communications Commission] 'not be made routinely available for public inspection.'" *Id.* at 660-61 (quoting 47 C.F.R. § 0.459(a)(1)).

Rather than being prohibitory, the language of RCW 4.24.550, as it pertains to sex offender records, is framed in terms of what an agency is permitted to, or must, do. *See generally* RCW 4.24.550. There is no language in the statute that prohibits an agency from producing records. *Id.* Even the language of RCW 4.24.550(3)(a)—which the John Does argue is the portion of the statute that exempts sex offender registration information from production—is permissive. An agency "may disclose" records; it "shall consider the following guidelines." RCW 4.24.550(3)(a). The plain language of RCW 4.24.550 does not explicitly exempt any records from production.

We also note that when courts have found an "other statute" exemption, they have also identified a legislative intent to protect a particular interest or value. *See, e.g., Limstrom v. Ladenburg*, 136 Wn.2d 595, 607, 963 P.2d 869 (1998) ("The general purpose of the exemptions to the Act's broad mandate of disclosure is to exempt from

public inspection those categories of public records most capable of causing substantial damage to the privacy rights of citizens . . . ."). For example, in *Fisher Broadcasting*, we found it was the legislature's intent to "protect the integrity of law enforcement investigations and court proceedings." 180 Wn.2d at 527. In *Planned Parenthood*, the statute was designed to protect the identity of patients who receive abortion services and the facilities that provide them. 187 Wn. App. at 624-25. And in *Wright*, the statute's purpose was to "protect children." 176 Wn. App. at 595.

Nothing in RCW 4.24.550 indicates a legislative intent to protect level I sex offenders or their victims.[3] RCW 4.24.550(1) and (2) guide an agency in deciding to proactively publish sex offender information. Subsection (5) directs mandatory disclosure. Subsections (7) and (8) provide immunity for both disclosing and not disclosing sex offender information. Subsection (9) explicitly states that sex offender information is not confidential. And subsection (3), the relevant portion of the statute at issue here, provides nonmandatory guidelines for dissemination in particular circumstances.

The John Does fear harassment both from Zink and others. We offer no opinion about Zink's purpose, but if the legislature wanted to protect level I sex offenders from

---

[3] As noted by the John Does, amicus Washington Association of Criminal Defense Lawyers, and the Sex Offender Policy Board, the majority of sex offenses are committed against someone known, and victims may suffer additional trauma as their identity may be ascertained once the identity of the offender is released. They also provide evidence that the blanket release of level I sex offender registration information may not increase community safety, and may actually increase recidivism. Whatever the merits of these policy arguments may be, nothing in the language of RCW 4.24.550 gives them force or creates an exemption. Further, policy issues are not the province of this court and are best left to the legislature.

harassment—as it protected animal researchers from harassment in *PAWS* II and abortion service providers from harassment in *Planned Parenthood*—it would have done so expressly, either through explicit language or by making RCW 4.24.550(3)(a) the exclusive means for obtaining such records.

The John Does also urge the court to imply an exemption based on the terms "public disclosure" and "confidential" within the statute. RCW 4.24.550(2), (3), (9). Subsection (2) provides that "the extent of the public disclosure of relevant and necessary information shall be rationally related to" certain factors. RCW 4.24.550(2). Subsection (3) discusses guidelines so that agencies may determine "the extent of a public disclosure." RCW 4.24.550(3). And subsection (9) states that "[n]othing in this section implies that information regarding [sex offenders] is confidential." RCW 4.24.550(9).

The John Does argue that "public disclosure" refers to producing documents or information in response to a PRA request. By including this language, they argue, the legislature made RCW 4.24.550 the exclusive mechanism for obtaining sex offender records. This is too far a stretch. At the time Zink made her request, the statute did not mention the PRA or a public records request.[4] While this court tries to harmonize the language of statutes, the same term used in different statutory schemes without definition may carry different meanings "'according to the context in which it is used.'" *Graham v.*

---

[4] As discussed *infra* note 2, the 2015 amendments also modified subsection (5)(c), directing the WASPC to refer a request made under chapter 42.56 RCW to the appropriate law enforcement agency. LAWS OF 2015, ch. 261, § 1(5)(c)(i). While this amendment was made retroactive, its effect is to relieve the WASPC of production responsibilities under the PRA; it does not retroactively change the meaning of "public disclosure" and thus does not affect our analysis.

*State Bar Ass'n*, 86 Wn.2d 624, 626, 548 P.2d 310 (1976) (quoting *State ex rel. Tattersall v. Yelle*, 52 Wn.2d 856, 863, 329 P.2d 841 (1958) (holding that a statute calling the bar association an "agency of the state" did not use "agency" in the same sense as in a separate unrelated statute regarding audits of state agencies)). Here, the context is that of a state agency proactively disseminating information to the public regarding sex and kidnapping offenders as directed by the community protection act. Accordingly, we reject the contention that the phrase "public disclosure," as used in RCW 4.24.550, is a term of art referring to an agency's production of records under the PRA. Rather, it is used in a general sense, referring to a state agency's mandatory and discretionary dissemination of sex offender information to the public. The use of the term "public disclosure" in RCW 4.24.550(2) and (3) does not render the statute an "other statute" providing the exclusive mechanism for responding to PRA requests for sex offender records.

Similarly, the John Does urge this court to interpret "confidential" as a term of art under the PRA, which would allow the records to be exempt from a PRA request, yet still give effect to subsection (9). RCW 4.24.550(9) states that "[n]othing in this section implies that information regarding [convicted sex offenders] is confidential except as may otherwise be provided by law." No other law limits the production of sex offender registration forms or the WSP's sex offender database. Accepting the John Does' interpretation would require this court to distinguish between a record that is "exempt" and one that is "confidential."

Under the model rules of the PRA, "[e]xemptions are 'permissive rather than mandatory.' Therefore, an agency has the discretion to provide an exempt record. However, in contrast to a waivable 'exemption,' an agency cannot provide a record when a statute makes it 'confidential' or otherwise prohibits disclosure." WAC 44-14-06002(1) (citation omitted) (quoting 1980 Op. Att'y Gen. No. 1, at 5). In other words, a record could be classified as nonconfidential but still be exempt from production.

Zink and the WSP argue that we should read "confidential" in the general sense. Under their reading, the plain language of the statute specifically disclaims the confidentiality of sex offender records, making them subject to disclosure under a PRA request. We agree with Zink and the WSP. Subsection (9) was part of the original bill in 1990 and remains unchanged. LAWS OF 1990, ch. 3, § 117(4). The only reference to the PRA in RCW 4.24.550 came after the initiation of this lawsuit. We therefore decline to read "confidential" as a term of art under the PRA. Rather, we read it within the context of RCW 4.24.550—the focus of which is to increase community notification and awareness—and give "confidential" a general meaning. Nothing in RCW 4.24.550 is intended to restrict the public's access to sex offender registration information.

The bill history of the recent amendments supports this reading. In the 2015 regular session, the legislature rejected an amendment that would have deleted subsection (9) in its entirety and replaced it with "[s]ex offender . . . registration information is exempt from public disclosure under chapter 42.56 RCW." *Compare* S.B. 5154, 64th Leg., Reg. Sess., at 5 (Wash. 2015), *with* SUBSTITUTE S.B. 5154, 64th Leg., Reg. Sess., at

6 (Wash. 2015) (LAWS OF 2015, ch. 261, § 1). Although a failed amendment means little, it does show that the legislature knows how to exempt sex offender records under the "other statute" provision of RCW 42.56.070(1) if it wishes to do so. If there were any doubt as to whether or not RCW 4.24.550(3)(a) exempts sex offender registration records from PRA requests, subsection (9) resolves it. If not dispositive of this case on its own, subsection (9) at the very least confirms our conclusion that RCW 4.24.550(3)(a) is not an "other statute" exempting sex offender records.

The John Does next argue that if RCW 4.24.550 is not an "other statute," it "would be eviscerated." Br. of Resp'ts John Does at 9 (boldface omitted). They argue that the distinction between levels of sex offenders would disappear and that RCW 4.24.550(3)(a), specifically the "upon request" language, would become meaningless. We disagree. When interpreting a statute, we strive to avoid a construction that would render a portion of a statute meaningless. *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007). RCW 4.24.550 was intended to deal with the proactive release of information to the public by a state agency. The division of sex offenders into three levels, based on their likelihood to reoffend, still functions as a guide to what information law enforcement agencies may or must make known to the public. Likewise, within the context of RCW 4.24.550 as a whole, subsection (3)(a) operates to guide agencies in choosing what to disclose sua sponte. Furthermore, even if RCW 4.24.550(3)(a) were rendered meaningless by this decision, "[i]n the event of conflict

18

between the provisions of this chapter and any other act, the provisions of this chapter shall govern." RCW 42.56.030.

The John Does and amicus Washington Association of Criminal Defense Lawyers (WACDL) also argue that holding RCW 4.24.550 is not an "other statute" will essentially overrule *State v. Ward*, 123 Wn.2d 488, 869 P.2d 1062 (1994), and possibly call the constitutionality of the sex offender registration statute into question once again. In *Ward*, we considered whether the sex offender registration statute constituted ex post facto punishment. *Id.* at 492. We held that it did not, reasoning "that because the Legislature has limited the disclosure of registration information to the public [in RCW 4.24.550], the statutory scheme does not impose additional punishment on registrants." *Id.* at 502.

To support their argument, the John Does and the WACDL interpret our holding to refer to disclosure of registration information to the public in response to a PRA request. However, that was not the issue addressed in *Ward*. The "disclosure" repeatedly referenced in *Ward* dealt with an agency's *proactive* dissemination of sex offender registration information under the scheme set forth in RCW 4.24.550. In other words, because the statute limited what an agency could disseminate on its own, i.e., it could not publish sex offender information simply because it wanted to or because it wanted to punish a particular offender, the statute did not constitute ex post facto punishment. *Id.* at 502-03. Nothing in *Ward* dealt with an agency's response to a public records request. *Ward* remains good law, as does its reasoning.

We also note that the Supreme Court recently rejected this concern in *Smith v. John Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). In *Smith*, the Court determined whether Alaska's Sex Offender Registration Act, 1994 Alaska Sess. Laws 41, requiring convicted sex offenders to register with law enforcement authorities, constituted ex post facto punishment. *Id.* at 89. Alaska's Department of Public Safety maintains a central registry of sex offenders. *Id.* at 90. The information from that registry—including "the sex offender's . . . name, aliases, address, photograph, physical description, description[,] license [plate numbers], place of employment, date of birth, crime for which convicted, date of conviction . . . and whether the offender . . . is in compliance . . . or cannot be located"—is published by the state online. *Id.* at 91 (some alterations in original) (quoting ALASKA STAT. § 18.65.087(b)). The Court held the act was nonpunitive and did not violate the ex post facto clause. *Id.* at 105-06. Because "there is no suggestion that an [ex post facto] analysis under both [the federal and state] constitutions should not be the same," an abrogation of *Ward* would have no legal effect. *Ward*, 123 Wn.2d at 496.

Finally, we address the findings and recommendations of the Sex Offender Policy Board (SOPB). Recently, the legislature tasked the SOPB with making findings and recommendations regarding, among other things, the "[d]isclosure to the public of information compiled and submitted for the purposes of sex offender and kidnapping offender registries that is currently held by public agencies, including the relationship between chapter 42.56 RCW and RCW 4.24.550." LAWS OF 2015, ch. 261 § 16(1)(a).

After oral argument, the John Does submitted the report as additional authority to support interpreting RCW 4.24.550 as an "other statute." Of particular interest, we note the SOPB recommended that:

A) RCW 4.24.550 be amended to include the following sentence:
Sex offender and kidnapping offender registration information is exempt from public disclosure under chapter 42.56 RCW.

B) RCW 42.56.240 be amended to include the following sentence:
The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:
Information compiled and submitted for the purposes of sex offender and kidnapping offender registration pursuant to RCW 4.24.550 and 9A.44.130, or the statewide registered kidnapping and sex offender website pursuant to RCW 4.24.550, regardless of whether the information is held by a law enforcement agency, the statewide unified sex offender notification and registration program under RCW 36.28A.040, the central registry of sex offenders and kidnapping offenders under RCW 43.43.540, or another public agency.

Resp'ts John Does' Notice of Suppl. Auth., Ex. A at 23. Had these recommendations been adopted, our decision on whether RCW 4.24.550 is an "other statute" under the PRA would likely be different.

Finally, the SOPB report includes policy arguments to exempt the blanket release of level I sex offender registration records. *See id.* at 19-22. However, policy decisions are best left to the legislature and do not absolve us of our responsibility to follow the PRA's "strongly worded mandate for broad disclosure of public records." *Hearst Corp.*, 90 Wn.2d at 127.

The PRA, and our case law surrounding it, demands that an "other statute" exemption be explicit. Where the legislature has not made a PRA exemption in an "other

statute" explicit, we will not. Because of the presumption of disclosure under the PRA, the lack of any prohibitory language—save for a *mandate against confidentiality*—or explicit exemption in RCW 4.24.550 and this state's precedent in "other statute" cases, we hold that RCW 4.24.550, specifically RCW 4.24.550(3)(a), is not an "other statute" under RCW 42.56.070(1) and that level I sex offender registration information is subject to disclosure under a PRA request.[5]

Because we find that these records are available, it is unnecessary to consider whether the trial court abused its discretion by allowing the plaintiffs to proceed in pseudonym. The issue is moot; Zink will receive the records—and the names of the parties—and even if this court were to hold that proceeding in pseudonym was in error, we would be unable to offer any further relief, as it has already been granted.[6] It is also unnecessary for this court to consider whether the permanent injunction was overbroad because we reverse the injunction as ordered. Finally, we do not need to address whether

---

[5] The dissent claims that under our holding, both *Hangartner* and *PAWS* II would have a different result. Dissent at 10. Not so. In *Hangartner*, the attorney-client privilege statute used broad prohibitive language to prevent the disclosure of privileged documents in particular situations. 151 Wn.2d at 453. In *PAWS* II, we held that both the Uniform Trade Secrets Act (UTSA), chapter 19.108 RCW, and the anti-harassment statute, RCW 4.24.580, were "other statutes." 125 Wn.2d at 262-63. The UTSA authorized an injunction to protect trade secrets where a showing was made that such protection was necessary. *Id.* at 262; RCW 19.108.020(3). Additionally, *PAWS* II cited to legislative history in which the legislature declared "it *a matter of public policy that the confidentiality of such information be protected and its unnecessary disclosure be prevented.*" 125 Wn.2d at 263 (quoting LAWS OF 1994, ch. 42, § 1). The same is true of the antiharassment statute.

[6] Zink asks that we reverse the trial court's ruling, Br. of Appellants Zink at 27, but specifically requests that we not remand for consideration of the factors laid out in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982). Reply Br. of Appellants Zink at 23. Were we to find that *Ishikawa* applied to proceeding in pseudonym—an issue on which we express no opinion—the remedy would be to remand to the trial court to apply the *Ishikawa* factors, a remedy Zink rejects.

the class was properly certified. Although we express no opinion on it here, even if the class were improperly certified, a decision decertifying the class or remanding to the trial would serve no purpose and would cost the litigants time and money, as the issue on which the class members brought suit has been decided.

Penalties and Attorney Fees

Next, we address whether Zink is entitled to attorney fees, costs, and per diem penalties. We hold that she is not.

Zink argues that if RCW 4.24.550 is not an "other statute," then she is entitled to per diem penalties and attorney fees and costs. She requests that either this court assess penalties and fees or remand to the trial court. We decline both requests.

The plain language of the PRA governs this issue. RCW 42.56.550(4) provides that

> [a]ny person who prevails *against an agency* in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

(Emphasis added.) Although Zink prevailed in the sense that RCW 4.24.550 is not an "other statute" under the PRA, she did not prevail against an agency. Both the WSP and WASPC took the position that the records were subject to disclosure. Therefore, Zink did not "prevail against an agency" but rather prevailed against a private party seeking to enjoin disclosure.

*Confederated Tribes* interpreted RCW 42.56.550(4)[7] in a nearly identical scenario and is on point. 135 Wn.2d at 757. In *Confederated Tribes*, our state Gambling Commission received a request for public records and notified several interested parties to whom the records pertained rather than immediately provide the records. *Id.* at 742. The notified tribes filed actions to enjoin disclosure. *Id.* at 743. The Gambling Commission took the position that the records were subject to disclosure. *Id.* at 742. We agreed with the Gambling Commission and requester; the records were subject to disclosure under the PRA. *Id.* at 739. However, we held that the requester was not entitled to attorney fees, costs, or penalties under the PRA because the requester "prevailed against the Tribes, not against the agency." *Id.* at 757.

The same is true here. The WASPC notified the John Does of its intent to disclose the records absent a court order. The WSP and WASPC advocated for the release of the records. And the records were withheld not because of agency action, but because of a court order enjoining their release. Just as the PRA in *Confederated Tribes* did not "authorize attorney fees in an action brought by a private party . . . to prevent disclosure of public records held by an agency where the agency has agreed to release the records but is prevented from doing so by court order," *id.*, so too does RCW 42.56.050(4) operate to deny Zink's request for attorney fees and penalties.

---

[7] This case actually interpreted the PRA's predecessor, the public disclosure act, former RCW 42.17.340 (1997), but its interpretation applies to the PRA, which recodified the relevant provisions without amendment. Our reference to the PRA in discussing this case is to avoid confusion.

Zink further argues that because WASPC "wrongfully delayed the release of records . . . by notifying [the John Does]," she is entitled to an award of penalties. Reply Br. of Appellants Zink at 16. Again, the PRA controls. RCW 42.56.540 states that "[a]n agency has the option of notifying persons named in the record or to whom a record specifically pertains, that release of a record has been requested. However, this option does not exist where the agency is required by law to provide such notice." Nothing about the WASPC's conduct was wrongful. Therefore Zink's request for an award of attorney fees, costs, and per diem penalties is denied.

## CONCLUSION

An "other statute" exemption must be explicit, this court may not imply one. Because the legislature did not make it explicit, we hold that RCW 4.24.550 is not an "other statute" under the PRA and reverse the trial court. We further hold that under the PRA and *Confederated Tribes*, Zink is not entitled to attorney fees, costs, or penalties, as she prevailed against a private party, not an agency.

The trial court is reversed, and the request for fees and penalties is denied.

No. 90413-8

_Madsen, C.J._

WE CONCUR:

_____

_____          _González, J._

_Fairhurst, J._

_____          _____

26

No. 90413-8

GORDON McCLOUD, J. (dissenting)—The Public Records Act (PRA), ch. 42.56 RCW, requires agencies to disclose information to requesters unless an "other statute," RCW 42.56.070(1), exempts that information from blanket disclosure. The question here is whether the community protection act (CPA), RCW 4.24.550— particularly its provisions governing the disclosure of information about registry- compliant level I sex offenders—constitutes such an "other statute." RCW 42.56.070(1). The majority holds that that the CPA does not because it does not expressly and absolutely prohibit disclosure of any particular sex offender registry record. Majority at 10. But this holding conflicts with both our precedent and our legislature's intent. Those sources compel the opposite conclusion: that the CPA is an "other statute" under RCW 42.56.070(1). Because the CPA bars blanket disclosure of the requested information and instead requires agencies to conduct a carefully crafted, specific, and individualized inquiry, and because the John Does

have met the other prerequisites for an injunction barring blanket PRA disclosure, I respectfully dissent.

## THE TRIAL COURT CORRECTLY CONCLUDED THAT THE CPA (RCW 4.24.550) BARS THE BLANKET DISCLOSURE OF LEVEL I SEX OFFENDER REGISTRY INFORMATION AND ENTERED A PROPERLY TAILORED INJUNCTION

When reviewing a trial court order enjoining disclosure under the PRA, "'[w]e start with the proposition that the act establishes an affirmative duty to disclose public records unless the records fall within specific statutory exemptions." *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 258, 884 P.2d 592 (1994) (*PAWS*) (plurality opinion) (alteration in original) (quoting *Spokane Police Guild v. Wash. State Liquor Control Bd.*, 112 Wn.2d 30, 36, 769 P.2d 283 (1989)). The party resisting disclosure bears the burden of proving that an exemption applies. *Ameriquest Mortg. Co. v. Office of Att'y Gen.*, 177 Wn.2d 467, 486-87, 300 P.3d 799 (2013) (*Ameriquest* II). When (as in this case) the party resisting disclosure is not a state agency, that party must also prove two factual prerequisites to an injunction: "(1) that the record in question specifically pertains to that party [and (2)] that the disclosure would not be in the public interest and would substantially and irreparably harm that party or a vital government function." *Id.* at 487 (citing RCW 42.56.540).

In this case, the John Does have met both the legal and factual prerequisites to an injunction barring the blanket release of records in response to Zink's request. They have shown that the PRA's "other statute" exemption applies (the legal prerequisite), that the records at issue pertain specifically to them (the first factual prerequisite), and that blanket disclosure would cause substantial and irreparable harm rather than serving the public interest (the second factual prerequisite). The trial court's injunction was also properly tailored and not overbroad.

A.    The CPA constitutes an "other statute" within the meaning of RCW 42.56.070(1), exempting level I sex offender registry information from blanket disclosure under the PRA

As the majority acknowledges, the CPA codifies various requirements related to agencies' maintenance and publication of information about registered sex and kidnapping offenders, RCW 4.24.550, and these requirements vary according to an offender's "risk level," RCW 4.24.550(3). *See* majority at 9-10. Of particular significance here, the CPA expressly limits the information that law enforcement agencies may disclose in response to citizen requests. RCW 4.24.550(3). Presumably because of these limits, the CPA appears on a list of "Exemption and

3

Prohibition Statutes Not Listed in [the PRA]" accessible through the Washington State Patrol's (WSP) website.[1]

I agree with the majority on several basic points related to the CPA's history and purpose. First, I agree that the CPA, RCW 4.24.550, has always afforded the public fairly broad access to information about registered sex offenders. *See* majority at 8. Indeed, that fundamental aspect of the CPA is not in dispute here: the John Does agree that the legislature first enacted RCW 4.24.550 to combat agencies' "'reduced willingness to release information.'" Br. of Resp'ts John Does at 7 (quoting LAWS OF 1990, ch. 3, § 116). To that end, the CPA still shields officials and agencies from liability for the discretionary "release of relevant and necessary information," provided the release is not grossly negligent or in bad faith. RCW 4.24.550(7). I also agree that the disclosures authorized under RCW 4.24.550 vary according to an offender's risk level. *See* majority at 9. Again, this aspect of the CPA is not in dispute.[2] Finally, I agree with the majority that the CPA limits the

---

[1] Exemption and Prohibition Statutes Not Listed in Chapter 42.56 RCW, http://www.wsp.wa.gov/publications/reports/exemption_statutes_not_listed_in_RCW-42.56.pdf.

[2] Br. of Appellant WSP at 15 ("Risk classification determines, in part, the level of community notification for the sex offender."); Br. of Resp'ts John Does at 8 ("the law identifies 'the nature and scope of permissible public notifications . . . for each risk level classification'" (alteration in original) (quoting FINAL B. REP. ON ENGROSSED SUBSTITUTE S.B. 5759 (Wash. 1997))). While RCW 4.24.550 began as a brief statute authorizing

4

disclosure of registry information by telling agencies what they "'may disclose'"

about level I offenders "'upon request.'" Majority at 10 (quoting RCW

4.24.550(3)(a)).

But I disagree with the majority's conclusion that an individual may

completely circumvent these disclosure limits just by filing a PRA request. The

majority reaches this conclusion only by adopting the appellants' strained

interpretation of the CPA: that it governs only "proactive" community notification,

as opposed to *reactive* disclosures in response to citizen requests.[3] In adopting this

interpretation, the majority ignores the CPA's plain language, which governs *both*

agencies' "proactive[]" disclosures (e.g., the publication of offender information on

the Washington Association of Sheriffs and Police Chiefs (WASPC) website, RCW

---

agencies to release "relevant and necessary information regarding sex offenders to the
public when . . . necessary," LAWS OF 1990, ch. 3, § 117(1), it has evolved into a
significantly more complex scheme distinguishing between offenders posing different
levels of risk to the community, *see* majority at 9-10.

[3] Majority at 14 ("RCW 4.24.550(1) and (2) guide an agency in deciding to *proactively*
publish sex offender information" (emphasis added)); Br. of Appellant WSP at 10 (arguing
that RCW 4.24.550 just tells law enforcement agencies "how to *proactively* disseminate
information about sex offenders to schools, neighbors, and the media" (emphasis added));
Wash. Ass'n of Sheriffs & Police Chiefs Br. in Resp. at 10 (the CPA's "proactive
instruction contains no provision that exempts disclosure under the PRA"); Br. of
Appellants Zink at 30 (the CPA "requires proactive action by law enforcement and is not
dependent on whether a request for information has been made").

4.25.550(5)) *and* their responses to citizen requests (RCW 4.24.550(3)(a)). Majority
at 9-10. It also articulates a brand new and extremely rigid interpretation of the
PRA's "other statute" exemption. RCW 42.56.070(1).

> *1.    The majority's new rule frustrates the legislative intent
> expressed in the CPA's plain language; it is therefore contrary
> to our precedent interpreting the PRA's "other statute"
> exemption, RCW 42.56.070(1)*

When faced with a question of statutory interpretation, our duty is to identify
and give effect to the legislature's intent, beginning with the statute's plain language[4]
and avoiding, where possible, an interpretation that renders any portion of the statute
meaningless or superfluous.[5] These basic rules of statutory interpretation compel
the conclusion that, contrary to the majority's holding, the CPA governs both
"proactive[]" *and* reactive disclosures of registry information. Majority at 14.

When Zink submitted the PRA requests at issue in this case, the CPA provided
that an agency "may disclose, upon request, relevant, necessary, and accurate
information [about a level I offender] to any victim or witness to the offense and to
any individual community member who lives near the residence where the offender
resides, expects to reside, or is regularly found." Former RCW 4.24.550(3)(a)

---

[4] *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 154 Wn.2d 345, 350, 111 P.3d 1173 (2005).

[5] *In re Estate of O'Brien*, 109 Wn.2d 913, 918, 749 P.2d 154 (1988).

6

(2014).[6] In keeping with the plain language of this provision, the trial court in this case concluded that our legislature intended to prohibit law enforcement agencies from making "'blanket' or generalized production of sex offender records." Clerk's Papers (CP) at 567-68 (Order Granting Pls.' Mot. for Summ. J. & Prelim. Inj.) ("The legislature has carefully created a statute that ties the level of public disclosure [to] the level of risk posed by an individual offender [and] [t]he Legislature's intent was clearly to limit disclosure to the general public to those circumstances presenting a threat to public safety.").

The trial court was correct. The CPA—particularly subsection (3)(a)—contains both mandatory and permissive language: it tells agencies what registry information they "shall" share with specific institutions (for level I offenders, "appropriate law enforcement agencies" and the offender's school) and what registry information they "may" disclose in response to citizen requests. RCW 4.24.550(3)(a). For this permissive language to have any meaning whatsoever, it must describe and therefore limit the scope of *permissible* "disclos[ures] upon request." *Id.* Thus, at least with respect to level I offenders, the CPA's plain

---

[6] As the majority explains, this statute was amended in 2015 to permit disclosures to "any individual who requests information regarding a specific offender." LAWS OF 2015, ch. 261, § 1(3); majority at 10 n.2.

language contemplates—and *limits*—the release of information in response to citizen requests.

Under the majority's holding, any individual may now completely circumvent those limits by issuing a blanket PRA request for all level I offender registry information. This is because, under the new rule the majority adopts, no statute can be an "other statute," for purposes of the PRA unless it prohibits disclosure expressly and absolutely. Majority at 10. This is a significant departure from precedent; we have never before interpreted the PRA to nullify another statute in this manner.

It is true that Washington courts have held statutes with express nondisclosure or confidentiality provisions to be "'other statute[s]'" under the PRA. Majority at 10-12 (quoting *Planned Parenthood of Great Nw. v. Bloedow*, 187 Wn. App. 606, 623, 350 P.3d 660 (2015); *Wright v. State*, 176 Wn. App. 585, 597, 309 P.3d 662 (2013); *Deer v. Dep't of Soc. & Health Servs.*, 122 Wn. App. 84, 92, 93 P.3d 195 (2004); *Ameriquest Mortg. Co. v. Office of Att'y Gen.*, 170 Wn.2d 418, 424, 241 P.3d 1245 (2010) (*Ameriquest* I)).

But our courts have also reached this conclusion in the absence of such a provision. In *Hangartner v. City of Seattle*, 151 Wn.2d 439, 452-53, 90 P.3d 26 (2004), for example, this court held that the attorney-client privilege codified at RCW 5.60.060(2)(a) was an "other statute" under the PRA's predecessor (the public

8

disclosure act (PDA), former ch. 42.17 RCW (2000)) (internal quotations omitted). Four justices dissented, arguing—just as the majority does in this case—that the alleged "other statute" at issue did not expressly prohibit agency disclosure. *Id.* at 458 (Johnson, J., dissenting) (because "the attorney-client privilege statute is directed at the attorney, not the agency," the majority's decision to "incorporate[] [it] into the 'other statute' exemption . . . renders ineffectual the PDA's strong mandate to *agencies* that they must disclose public information"). Like the CPA, the attorney-client privilege statute contains no express confidentiality or nondisclosure provisions; it provides only that "an attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his advice given thereon in the course of any professional employment." RCW 5.60.060(2)(a). Nevertheless, in *Hangartner* we held that it was "unquestionably a statute . . . that prohibits the disclosure of certain records" and was therefore an "other statute" under the PDA. 151 Wn.2d at 453. The majority now essentially adopts the *Hangartner* dissent, without saying so explicitly.

Similarly, in *PAWS*, we held that the state Uniform Trade Secrets Act (UTSA), ch. 19.108 RCW, was an "other statute." 125 Wn.2d at 262 (plurality), 272-73 (Andersen, C.J., concurring) (agreeing with the plurality's analysis in its

entirety). We did so not because the UTSA contained any express or absolute exemption provisions, but because it provided that "'[i]n appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.'" *Id.* at 262 (plurality) (alteration in original) (quoting RCW 19.108.020(3)). On the basis of this permissive and conditional language, this court concluded that "[t]he [PRA] is simply an improper means to acquire knowledge of a trade secret." *Id.*

Neither the statute at issue in *Hangartner* nor the statute at issue in *PAWS* would have satisfied the test the majority adopts today. Neither statute contained any express exemption or confidentiality provision. Nevertheless, this court found each statute was an "other statute" because a contrary conclusion would have frustrated our legislature's intent to protect certain information from unfettered disclosure. *See Hangartner*, 151 Wn.2d at 453 ("[w]hen the legislature amended the PDA to include the 'other statute' exemption, it could have easily trumped the attorney-client privilege by excluding it from consideration as an 'other statute'" (citing LAWS OF 1987, ch. 403, § 3)); *PAWS*, 125 Wn.2d at 262-63 (concluding that the UTSA is an "other statute" in part because our legislature has declared the protection of trade secrets a matter of public policy (quoting LAWS OF 1994, ch. 42, at 130)).

The same reasoning should control the outcome in this case. The majority's conclusion that RCW 4.24.550 governs only "proactive[]"[7] disclosures is directly contradicted by the statute's plain language. That plain language also governs and expressly *limits* agencies' responses to citizen requests. By concluding that the PRA trumps and nullifies these limits, the majority contradicts our precedent interpreting the PRA's "other statute" exemption, RCW 42.56.070(1).

The majority's new rule also frustrates the legislative intent expressed in the CPA. This is most evident in the majority's discussion of the CPA's nonconfidentiality provision (RCW 4.24.550(9)). That provision states, in its entirety, "Nothing in this section implies that information regarding persons designated in [RCW 4.24.550(1)] is confidential except as may otherwise be provided by law." RCW 4.24.550(9). The commonsense interpretation of this provision is that it reinforces agency discretion to release information about *individual* offenders. It clarifies, for example, that agencies remain free to disseminate "[c]onviction records . . . without restriction" pursuant to RCW 10.97.050(1), even if some of the information in these records is also contained in

---

[7] Majority at 9, 14.

the registry. But the majority rejects this commonsense interpretation in favor of one that gives RCW 4.24.550(9) much greater significance.

Having held that a statute must expressly and absolutely prohibit disclosure in order to constitute an "other statute" under RCW 42.56.070(1), the majority concludes that the CPA's nonconfidentiality provision has the opposite effect: by "specifically *disclaim*[*ing*] the confidentiality of sex offender records, [RCW 4.24.550(9)] *mak*[*es*] *them subject to disclosure under a PRA request.*" Majority at 17. In other words, the majority concludes that RCW 4.24.550(9) renders meaningless all of the disclosure limits codified at RCW 4.24.550(3). That, of course, conflicts with the rules that a statute is interpreted in context,[8] to give effect to all of its provisions and render no portion superfluous.[9]

Despite its evisceration of the CPA, the majority *also* concludes that even after today's holding, RCW 4.24.550 "still functions as a guide to what information law enforcement agencies may . . . make known to the public." Majority at 18. But it won't guide them very much. Specifically, it won't guide an agency responding to a request for the blanket, nondiscretionary disclosure of compliant level I offender information—disclosure that RCW 4.24.550(3)(a) prohibits by its plain terms. Of

---

[8] *State v. Budik*, 173 Wn.2d 727, 733, 272 P.3d 816 (2012).

[9] *State v. Ervin*, 169 Wn.2d 815, 823, 239 P.3d 354 (2010).

course, that request has already been filed. Majority at 22 ("Zink will receive the records"). When the WSP and WASPC fulfill this request, as today's holding requires, they will necessarily ignore every limitation in the CPA.

> 2. *The legislative history supports the conclusion that the CPA is an "other statute" under RCW 42.56.070(1)*

Thus, the CPA's plain language alone makes it an "other statute" under RCW 42.56.070(1). Nevertheless, I address the CPA's legislative history because the majority devotes a substantial portion of its analysis to that subject. See majority at 17-18, 20-21. Contrary to the majority's conclusion, the legislative history contains ample evidence that the CPA was intended to protect sex offender registry information—particularly information about compliant level I offenders—from blanket, nondiscretionary disclosure in response to citizen requests.

When the legislature first enacted the CPA in 1990, it included a statement of findings endorsing the "[r]elease of information about sexual predators to public agencies and *under limited circumstances*, the general public." LAWS OF 1990, ch. 3, § 116 (emphasis added). Thus, the law was originally envisioned as authorizing *limited*, not blanket disclosures. That fundamental aspect of the CPA has never changed: the bill report accompanying the amendment most relevant to this case— the 1997 amendment introducing risk level classification into the statutory scheme— describes that amendment as identifying "[t]he nature and scope of *permissible*

13

public notifications" for each risk level. FINAL B. REP. ON ENGROSSED SUBSTITUTE

S.B. 5759, 55th Leg., Reg. Sess., at 2 (Wash. 1997) (emphasis added). And as the

trial record in this case makes clear, the law enforcement agencies tasked with

implementing the CPA have always understood the statute to strictly limit public

disclosure of information about level I offenders.[10] For all of these reasons, the trial

court concluded that "[t]he legislative history of RCW 4.24.550 clearly sets forth a

legislative intention to limit release or disclosure of sex offender information to the

general public." CP at 566 (Conclusion of Law 21).

Instead of addressing this legislative history, the majority focusses on one

failed 2015 amendment, which would have replaced RCW 4.24.550(9) (the

nonconfidentiality provision) with a section providing that "'[s]ex offender [and]

kidnapping offender registration information is exempt from public disclosure under

chapter 42.56 RCW,'"[11] and on a report containing a similar recommendation, which

---

[10] CP at 297-98 (Decl. of John Clayton, Assistant Secretary of the Juvenile Justice and Rehabilitation Administration (JJ&RA) ("[t]he JJ&RA has played a lead role in the Juvenile Sex Offender Management System since the passage of the [CPA] in 1990[,] . . . has worked closely with the Department of Corrections and local law enforcement agencies to ensure effective implementation of the Act, . . . [and] has understood from the beginnings of our involvement in the . . . risk level process that . . . community notification of any kind has been limited to those youth that have been assessed as either a level 2 or level 3").

[11] Majority at 17 (first alteration in original) (quoting S.B. 5154, 64th Leg., Reg. Sess., at 5 (Wash. 2015)).

the Sex Offender Policy Board (SOPB) completed at the legislature's direction in December 2015.[12] The majority concludes that the legislature's failure to codify this language "confirms . . . that RCW 4.24.550(3)(a) is not an 'other statute' exempting sex offender records." Majority at 18.

There are three problems with this conclusion.

First, the proposed amendment refers to *all* sex and kidnapping offender registry information, not just the lowest level offender information—it would even exempt information subject to mandatory publication on the Washington Association of Sheriffs and Police Chiefs (WASPC) website. *See* majority at 9 (describing website publication requirement in RCW 4.24.550(5)). Thus, it would expressly exempt a much broader range of registry records than those at issue in this case. It is not logical to conclude that by rejecting such a broad exemption, the legislature impliedly nullified all the disclosure restrictions that RCW 4.24.550 *already* codifies with respect to compliant level I offenders.

Second, with respect to registry-compliant level I offenders in particular, the SOPB report actually shows that the legislature may yet *expressly* clarify its intent to exempt registry information from disclosure under the PRA. As a practical matter,

---

[12] Majority at 21 (citing Resp'ts John Does' Notice of Suppl. Auth., Ex. A at 23).

the PRA's stiff monetary penalties, combined with the CPA's grant of immunity for "the release of relevant and necessary information," RCW 4.24.550(7), create an incentive for agencies to ignore the CPA's limits on the disclosure of level I offender information when responding to PRA requests. The legislature recognizes this problem: it was highlighted in the SOPB's December 2015 report. Resp'ts John Does' Notice of Suppl. Auth., Ex. A at 17 ("If an agency is asked to comply with the disclosure requirements of both [the PRA] and [the CPA], it is clear that the most prudent route for an agency to take is to liberally disclose records because there is a strict monetary penalty for non-disclosure under the PRA, and immunity [for] disclosure or non-disclosure . . . under [the CPA]. [Thus,] [t]*here is little incentive to adhere to the guidelines of RCW 4.24.550.*" (emphasis added)). But contrary to the majority's conclusion,[13] these compliance problems—and the fact that the legislature is still considering how best to address them—do not mean that the CPA isn't an "other statute," RCW 42.56.070(1), as a matter of law. Indeed, the SOPB report concludes *both* that the CPA is an "other statute" *and* that the legislature should amend RCW 4.24.550 to make this clear. Resp'ts John Does' Notice of Suppl. Auth., Ex. A at 17-18, 23.

---

[13] *See* majority at 21 ("Had [the Sex Offender Policy Board's] recommendations been adopted, our decision on whether RCW 4.24.550 is an 'other statute' under the PRA would likely be different.").

16

The final problem with the majority's reliance on the failed (and reproposed) amendment is that it is completely irrelevant under the rule the majority adopts in this case. The majority reasons that the failed 2015 amendment "show[s] that the legislature knows how to exempt sex offender records [from PRA requests] . . . if it wishes to do so," and concludes therefore that the legislature must have wanted level I sex offender records to be accessible through blanket PRA requests. Majority at 18. But the majority's rule would compel the same conclusion even if the legislature had rejected an amendment with the opposite language—expressly making all registry information *available* through blanket PRA requests. In that scenario, the CPA would still lack the language the majority deems necessary to trigger the PRA's "other statute" exemption: "explicit language" making the CPA "the exclusive means for obtaining [registry] records" or explaining that the CPA's restrictions on "'public disclosure'" do not evaporate in the context of a PRA request. Majority at 15-16 (quoting RCW 4.24.550 (2)).

B. The trial court's ruling on the factual prerequisites to an injunction was correct and certainly supported by substantial evidence

As noted above, in order to obtain an injunction barring the blanket release of level I offender records in response to Zink's PRA request, the John Does had to prove two factual prerequisites: (1) that the records at issue specifically pertain to them and (2) that blanket disclosure "would not be in the public interest and would

substantially and irreparably harm that party or a vital government function."
*Ameriquest* II, 177 Wn.2d at 486-87 (citing RCW 42.56.540). There is no legitimate dispute that the first of these prerequisites is satisfied.[14]

The trial court also found that the second factual prerequisite was satisfied: blanket disclosure would not be in the public interest and would substantially and irreparably harm the John Does. Specifically, the trial court found that the evidence submitted—declarations by individual class members, class members' parents, and several experts—"establishes that sex offenders who are identified by public disclosure face an increased risk of physical violence, stigmatization, mental and emotional distress, and loss of economic opportunity," and that "'[b]lanket' or generalized disclosure [of information on level I offenders] . . . undermines the carefully crafted legislative scheme" requiring "targeted and limited disclosure of sex offender registration information." CP at 564-65 (Finding of Fact 14-15).

There is overwhelming evidence in the record supporting this conclusion. The trial record contains numerous declarations by members of the plaintiff class that

---

[14] Zink implies that it is impossible to know whether any record at issue in this case "specifically pertains" to any plaintiff, since the plaintiffs were allowed to proceed as a class. Br. of Appellants Zink at 32-33. This is incorrect: the class is *defined* as consisting only of individuals "named" in the records that Zink requested. CP at 1608, 1619.

describe fears of unemployment, vigilantism, and stigmatization,[15] and from the parents of juvenile level I offenders and their victims that describe fears that public exposure will thwart efforts to rehabilitate and reunify their families.[16] These fears are not just speculative; many are based on the declarants' personal experience.[17] The record also contains declarations from several experts in the field of sex crime prevention that describe the negative impact that blanket disclosure of level I offender information would have on victims' recovery and offenders' incentive and ability to comply with treatment.[18]

---

[15] *E.g.*, CP at 202-11.

[16] *E.g.*, CP at 238-50.

[17] *E.g.*, CP at 211 (John Doe declaration stating that declarant was fired after telling his employer that he was a registered level I offender), 283-84 (father of juvenile John Doe and his victims describing family's experience when son was briefly listed on state registry website).

[18] *E.g.*, CP at 252-79, 297-302, 325-27.

Neither the WSP nor the WASPC assigns error to the trial court's factual findings. Zink assigns several errors to these findings,[19] but she does not point to anything in the record that rebuts the trial court's conclusions.[20]

The trial court correctly concluded that the John Does satisfied both the legal and factual prerequisites to an injunction barring blanket PRA disclosure of level I sex offender registry records.

---

[19] *E.g.*, Br. of Appellants Zink at 15 (assigning error to trial court's finding that "the evidence submitted clearly showed that sex offenders identified by public disclosure face physical violence, stigmatization, mental and emotional distress, and loss of economic opportunity"; assigning error to trial court's finding that "declarations filed anonymously by convicted felons are credible").

[20] In note 1 to her reply brief, Zink asserts that she "provided evidence of the relevance and need for public knowledge of all Level I sex offenders." Reply Br. of Appellants Zink at 2 n.1. But the evidence she cites all relates to individual offenders and to information that affected individuals could obtain through specific requests. *E.g.*, CP at 378-79 (article describing level I offender's arrest and charge in the death of a baby girl whose mother allowed him to live in her home), 381 (article quoting baby girl's mother stating that she checked Washington's online sex offender registry to find out whether defendant was listed, but found no information because he was a level I offender). None of this evidence explains why blanket as opposed to targeted disclosure of information on level I offenders would be in the public interest. In her "Memorandum" opposing the permanent injunction, Zink argued that this "evidence clearly shows the consequences to the public when sex offenders are secreted by law enforcement." CP at 346. But the trial court did not rule that law enforcement agencies must hide the identities and locations of level I offenders, nor do the John Does argue that this is what RCW 4.24.550 requires. Instead, the trial court determined that law enforcement agencies have discretion to disclose all of the information in the sex offender registry pertaining to level I offenders, provided they do so only after considering the three factors in RCW 4.24.550(5). CP at 566.

C.    The trial court's ruling was properly limited

The WSP argues that even if the trial court's declaratory judgment was correct (and RCW 4.24.550 does, as a matter of law, exempt the John Does' registry information from PRA disclosure), the court erred by refusing to expressly limit the scope of its injunction. First, the WSP argues that the court should have expressly limited the scope of the injunction to the records that specifically pertain to the class members. Second, it argues that the court should have limited the scope of the injunction to Zink. These arguments fail.

The court's order is divided into three paragraphs, as follows:

1) Declaratory judgment is entered providing that level I sex offender registration records are exempt from disclosure under RCW 42.56.070 pursuant to RCW 4.24.550. RCW 4.24.550 provides the exclusive mechanism for public disclosure of sex offender registration records.

2) The WSP and WASPC shall not make a "blanket" or generalized production of sex offender records of Class members in response to Ms. Zink's requests for public records (whether pending or made during the duration of this litigation (including any appeals)).

3) The WSP and WASPC may disclose relevant and necessary level I sex offender records in response to a request under RCW 4.24.550 by a member of the general public, after considering in good faith the offender's risk classification, the places where the offender resides or is expected to be found, and the need of the requestor to protect individual and community safety.

CP at 568-69.

The first paragraph does not create or modify an injunction; it is the requested declaratory judgment. The second paragraph does enjoin WSP and WASPC from producing records, but this paragraph is explicitly limited to Zink's records request and the records that the John Does sought to protect. Finally, the third paragraph does not enjoin WSP or WASPC from taking any action. Instead, it permits WSP and WASPC to produce records in response to Zink's request, provided that they conform their release of information to the requirements of RCW 4.24.550.

The WSP argues that the court exceeded its authority in the third paragraph and that the court's order in that paragraph is not consistent with court rules governing injunctions. But the third paragraph of the order is not an injunction; it is permissive and explanatory. It describes the method by which WSP and WASPC may produce documents pertaining to the class in response to any PRA request—including Zink's.

The trial court's ruling is not overbroad.

## CONCLUSION

I agree completely with the majority's assertion that the legislature, rather than this court, determines what records are exempt from PRA disclosure. Majority at 7-8. We have the same goal in a PRA case as in any case involving a question of statutory interpretation: to set aside our own policy views and identify the

legislature's intent. Majority at 14 n.3 ("policy issues are not the province of this court and are best left to the legislature"). But the rule the majority crafts frustrates this goal rather than furthering it. The legislature recognizes the policy problems inherent in the intersection of CPA and PRA requirements—and it is working to resolve those problems. *See supra* Section A.2. But by no stretch of the imagination is it reasonable to interpret these policy problems as an irreconcilable conflict between the two statutes. *Contra* majority at 18 ("even if RCW 4.24.550(3)(a) were rendered meaningless by [our] decision, '[i]n the event of conflict between the provisions of [the PRA] and any other act, the provisions of [the PRA] shall govern'" (second alteration in original) (quoting RCW 42.56.030)). On the contrary, we can easily harmonize the statutes by recognizing that the CPA provides the exclusive method for obtaining sex offender registry information and is therefore an "other statute" under the PRA. *See Deer*, 122 Wn. App. at 92 ("[b]ecause [the 'other statute' at issue] contains an alternative means of requesting and seeking . . . records that balances and protects the privacy needs of the [affected persons], we find no conflict"). Indeed, it is our duty to harmonize statutes whenever possible. *Harmon v. Dep't of Social & Health Servs.*, 134 Wn.2d 523, 542, 951 P.2d 770 (1998). By ignoring this duty and the plain language of the CPA, the majority preempts the legislature's policy making authority.