248 P.3d 150 (2011)
Shawn GREENHALGH, Appellant,
v.
DEPARTMENT OF CORRECTIONS, A subdivision of the State of Washington, Respondent.
No. 40144-4-II.
Court of Appeals of Washington, Division 2.
March 15, 2011.
Michael Charles Kahrs, Kahrs Law Firm PS, Seattle, WA, for Appellant.
Daniel John Judge, Attorney General's Office, Olympia, WA, for Respondent.
WORSWICK, A.C.J.
¶ 1 Shawn Greenhalgh, an inmate at the Monroe Correctional Complex (MCC), requested documents under the Public Records Act (PRA), chapter 42.56 RCW, from the Washington State Department of Corrections (DOC) listing items available for purchase at the Stafford Creek Corrections Center (SCCC) inmate store. He then sued the DOC, alleging that it had failed to adequately comply with his request. He now appeals from a trial court order denying his summary judgment motion and granting the DOC's cross-motion for summary judgment. Holding that the DOC fully complied with Greenhalgh's request and the PRA, we affirm.

*151 FACTS
¶ 2 On November 10, 2006, Greenhalgh sent his first PRA request in this case to Jane McKenzie, a DOC Public Disclosure Coordinator (PDC) at the Monroe Correctional Complex, seeking "[t]he most current Inmate Store Price List for the Stafford Creek Corrections Center Inmate Main Store." Clerk's Papers (CP) at 38. On November 21, McKenzie sent a letter to Greenhalgh acknowledging his request as follows:
This is to acknowledge receipt of your request for public disclosure received in my office on November 14, 2006. You are requesting the following documents:
1. Inmate store price list for MICC, SCCC, AHCC & CBCC.
2. MICC educational & vocational programs.
These documents are not located at MCC, therefore I am forwarding your requests. In the future please send your requests directly to the facility where the documents are located.
I anticipate that it may take up to thirty business days to gather available documents. There will be a 20-cent per page fee, plus the cost of postage, for any documents to be disclosed. You will be advised of the amount of the fee that will need to be paid prior to the documents being copied for release.
CP at 39. On that same day, Sheri Izatt, the PDC for SCCC, sent Greenhalgh the following letter:
This letter is to acknowledge receipt of your Public Disclosure Request received by Stafford Creek Corrections Center on November 21, 2006. You are requesting the following documents:
1. Offender store price list for Stafford Creek Correctional [sic] Center.
There are 2 page(s) responsive to your request. There is a copy fee cost of $0.20 per page, plus postage of $0.39. Please submit payment to Stafford Creek Corrections Center in the amount of $0.79 for the request. Upon receipt of payment, the documents will be mailed to you.
If you choose not to pursue this public disclosure request within (30) thirty days, this request will be closed.
CP at 41. Greenhalgh responded on November 28, and provided payment for the record. On December 11, Izatt mailed the record entitled "Stafford Creek Store Order List" to Greenhalgh. CP at 43-46. Greenhalgh then sent a letter to Izatt following up on the receipt of the record as follows:
Thank you for your letter dated December 11, 2006, in response to my request for public records; however, I have reason to believe that additional records exist, responsive to my request.
My request for public records specifically request(ed) the SCCC Offender Store Price List. In response to my request, you produced two (2) documentslisting presumably all of the general store items; however, these documents do not list any electrical appliances, e.g., radios, televisions, lamps, etc. I hereby ask that you look into this and see if there is another list, listing additional items.
CP at 47.[1] The DOC did not respond to this letter. On March 21, 2007, Greenhalgh sent another letter which stated:
This is my second follow-up letter regarding the above-referenced records request. My December 18, 2006 letter explained that your response was incomplete because the two pages of the SCCC Store List that you provided do not list any appliances such as T.V.'s and radios. Please produce the records requested in accordance with RCW 42.56.520.
CP at 48. The DOC treated this letter as a new PRA request, and on April 2, Izatt sent a letter to Greenhalgh, which stated:
This letter is a follow-up response to your Public Disclosure Request received by Stafford Creek Corrections Center on March 23, 2006, requesting a copy of the offender store price list for Stafford Creek Correctional [sic] Center.

*152 Upon further research, we found 1(one) additional page responsive to your request. There is a copy fee cost of $0.20 per page, plus postage of $0.39. Please submit payment to Stafford Creek Corrections Center in the amount of $0.59 for the request. Upon receipt of payment, the documents will be mailed to you.
CP at 49. A few days later, Greenhalgh remitted payment and Izatt provided "[a] copy of the offender store price list for Stafford Creek Correctional Center." CP at 50-52. This record included a list of electronics, including razors, lamps, headphones, and fans.
¶ 3 Greenhalgh filed a complaint for violation of the PRA on April 23, 2008. And on June 27, based on information provided to him by another inmate who formerly resided at SCCC that an additional list with various wrist watches for sale existed, Greenhalgh sent a letter to Gaylene Schave, a Public Disclosure Specialist at the DOC outlining his characterization of the facts surrounding his requests. In conclusion, he stated, "For whatever reason, PDC Izatt did not produce the fourth page of the November 2006 SCCC Inmate Store Price List. Please produce the missing page listing approximately fifty (50) wrist watches that were offered to offenders housed at SCCC in November 2006, so that we can resolve this request." CP at 56. This was the first request for a list of wristwatches the DOC received from Greenhalgh.
¶ 4 On July 8, Schave sent a letter to Greenhalgh acknowledging receipt of his letter. The letter stated that an additional 40 business days would be needed to determine whether the SCCC store list from November 2006 still existed. Greenhalgh replied and objected to the timeline. Schave again responded and stated that the DOC was searching its electronic files and that "this takes an extensive effort." CP at 59.
¶ 5 On July 31, Schave sent another letter to Greenhalgh:
This letter is in follow up to your clarification dated June 27, 2008 and received on June 30, 2008, regarding your public disclosure request SCCC 605 [sic] for item # 12 in your letter. You state there is a listing of various wrist watches available through SCCC.
Your original request SCCC-605, asked for the current inmate store price list for SCCC Main store. This request was responded to on December 11, 2006, when Ms. Izatt sent you the 2 page [sic] SCCC Main Store price list.
In your letter dated June 27, 2008, received on June 23, 2008, you now ask for the price list for wrist watches available for purchase through SCCC. This is a different list than the SCCC main store list previously provided. I have gathered 3 pages responsive. To obtain these pages please send a check or money order in the exact amount $1.02 ($0.20 × 3 pages = $0.60, [sic] with a mailing cost of $0.42) make [sic] payable to the Department of Corrections mail to the Public Disclosure Unit at PO Box 41118, Olympia, WA 98504. When your payment is received the documents will be mailed to you.
As stated in my letter dated of [sic] July 8, 2008, you can expect a response on or before September 3, 2008.
CP at 60 (emphasis in original). Greenhalgh sent a reply letter to Schave on August 15, objecting to her "version of the facts." CP at 61. He again requested "that your agency produce the last page of the 2006 store list, listing the wrist watches, or admit that the record has been destroyed." CP at 64.
¶ 6 On August 26, Schave provided a more detailed explanation regarding the DOC's efforts to fulfill Greenhalgh's requests:
The Department has provided all records we can find in DOC files and computers responsive to your request. However, there is a possibility that additional e-mails responsive to the scope of your request may exist on back up [sic] tapes that are currently being preserved by DOC in compliance with a litigation hold the Department is adhering to.
The only process currently available to DOC for restoration and review of these back up [sic] tapes is extremely time intensive. The Department has been examining how we can expedite the search of these records and definitively determine whether any additional records responsive to your *153 request do or do not exist on these tapes. We hope to have accurate time estimates for you in the next 30 business days, outlining what process we have found to search these back up [sic] tapes, in order to make certain we have provided all records responsive to your request.
CP at 65. Greenhalgh replied a few days later on August 29, and made a request for "the November 2006 inmate store price list, nothing else." CP at 66. Schave followed up again, notifying Greenhalgh that he could expect a response from the DOC on October 8 regarding his previous request "for the current inmate store price list for SCCC Main store." CP at 67. Then on September 12, Schave sent a letter acknowledging Greenhalgh's August 29 letter, which stated in part:
After further review of this request, the Department has provided all records we can find in DOC files and computers responsive to your request, as stated in my letter dated August 28, 2008. The date of your initial request, November 10, 2006, does not fit into the date parameters of the [sic] up tapes currently being preserved by DOC in compliance with a litigation hold the Department is adhering to.
This request is now considered closed.
CP at 68.
¶ 7 Greenhalgh ultimately served his complaint on July 15, 2008. He then moved for partial summary judgment asking the trial court to find that the DOC violated the PRA and to impose penalties based on the violation. The DOC filed a cross-motion for summary judgment, contending that Greenhalgh's action was time-barred and that the DOC responded to his request by providing him the document he actually requested. As part of his summary judgment motion, Greenhalgh included several declarations from other inmates regarding their firsthand knowledge of lists of inmate store items at the SCCC that included watches.
¶ 8 The first declaration, by George Clark, detailed a PRA request he made in 2008 for "[a] list of all the SCCC Inmate Store items offered to offenders housed at SCCC Medium Security Units, including the price for each item, as of March 1, 2008." CP at 73. According to Clark, the DOC responded to this request with a four-page document, including a list of wrist watches. The next declaration, by Kevin Corning, stated that during his time at SCCC between February 2007 and July 2007, "the SCCC Inmate Store [list] consisted of four (4) pages of items: two pages listing primarily food items, personal care items and over-the-counter drugs; one page listing electrical appliances (T.V., radios, fans, etc.); and one page listing approximately fifty (50) wrist watches." CP at 80. And the final declaration, from Hogan Burt, stated that during his time at the SCCC between 2001 and 2007, "the SCCC inmate store list consisted of four (4) pages" including "one page listing various wrist watches." CP at 82. Burt also stated that after reviewing "the two pages of documentation that SCCC provided [Greenhalgh] in response to his November 26, 2007 public records request... it is clear to me that the third and fourth pages are missing, i.e., the page listing the ... wrist watches." CP at 83.
¶ 9 In a letter ruling to the parties dated October 14, 2009, the trial court ruled in favor of the DOC, holding that the DOC complied with Greenhalgh's requests. Greenhalgh now appeals.

ANALYSIS

Standard of Review
¶ 10 We review challenges to agency actions under the PRA de novo. O'Neill v. City of Shoreline, 170 Wash.2d 138, 145 n. 1, 240 P.3d 1149 (2010); RCW 42.56.550(3). Appellate courts stand in the same position as the trial court where the record, as here, consists only of affidavits, memoranda, and other documentary evidence. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 252, 884 P.2d 592 (1994) (PAWS II). We also review summary judgment orders de novo. Oltman v. Holland Am. Line USA, Inc., 163 Wash.2d 236, 243, 178 P.3d 981 (2008). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party *154 is entitled to a judgment as a matter of law." CR 56(c). We consider all facts and reasonable inferences in the light most favorable to the nonmoving party. McNabb v. Dep't of Corr., 163 Wash.2d 393, 397, 180 P.3d 1257 (2008).
¶ 11 Mere allegations, argumentative assertions, conclusory statements, and speculation do not raise issues of material fact that preclude a grant of summary judgment. See Grimwood v. Univ. of Puget Sound, 110 Wash.2d 355, 360, 753 P.2d 517 (1988); Seven Gables Corp. v. MGM/UA Ent. Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986). Once the moving party meets its burden to show that there is no genuine issue as to any material fact, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclosing that a genuine issue as to a material fact exists. Strong v. Terrell, 147 Wash.App. 376, 384, 195 P.3d 977 (2008).

Production of Requested Records
¶ 12 The PRA requires agencies to produce "identifiable public records." RCW 42.56.080. A person seeking documents must identify or describe the documents with reasonable clarity to allow the agency to locate them. Hangartner v. City of Seattle, 151 Wash.2d 439, 447, 90 P.3d 26 (2004). The PRA does not "require public agencies to be mind readers." Bonamy v. City of Seattle, 92 Wash.App. 403, 409, 960 P.2d 447 (1998).
¶ 13 Former RCW 42.56.520 compels agencies to respond to PRA requests within five business days of receipt of the request by: (1) making the records available, (2) providing a reasonable estimate of when the records will be available, or (3) denying release of the records. Former RCW 42.56.520 (2006).[2] Agencies may request additional time "based upon the need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request." RCW 42.56.520 (2006).
¶ 14 Despite Greenhalgh's argument to the contrary, a review of his PRA requests and the exchanges between him and the DOC all show that the DOC complied with the requests under the PRA. In November 2006, Greenhalgh requested "[t]he most current Inmate Store Price List for the Stafford Creek Corrections Center Inmate Main Store." CP at 38. And just a few days later, he received correspondence from the DOC acknowledging his request, after which the DOC ultimately provided the documents. It was only through later correspondence that the scope of Greenhalgh's requests started to expand. The record suggests that the DOC continued to comply with Greenhalgh's efforts to seek additional information. And even though Greenhalgh provided declarations from fellow inmates, none of them concretely support his contention that a document with watch prices existed in November 2006 or that such a list was part of "the most current Inmate Store Price List for the Stafford Creek Corrections Center Inmate Main Store."[3] CP at 38.
¶ 15 A careful review of the record clearly shows that the DOC complied with the specific requests that Greenhalgh made. He did not request, as his fellow inmate Clark did, for example, "[a] list of all the SCCC Inmate Store items offered to offenders housed at SCCC Medium Security Units, including the price for each item, as of March 1, 2008." CP at 73. Even Greenhalgh's successive requests that expanded the scope of his original request were adequately responded to by the DOC. Because the DOC clearly made the records that existed available to Greenhalgh and provided reasonable estimates of when *155 the records would be made available, his argument fails.[4]
¶ 16 Affirmed.
We concur: HUNT and VAN DEREN, JJ.
NOTES
[1] Despite the assertions in this letter, Greenhalgh had not requested "the SCC Offender Store Price List," but had requested "[t]he most current Inmate Store Price List for the Stafford Creek Corrections Center Inmate Main Store." CP at 38.
[2] Various provisions of the PRA have been amended subsequent to the requests in this case. We reference the statutory language in effect at the time.
[3] Clark's declaration discusses only his own PRA request for the store price list as of March 1, 2008. Corning's declaration mentions only what he knew to be available in 2007, not 2006. And Burt's declaration encompasses a six-year range (2001 to 2007) of what price lists he recalls, but he does not specifically substantiate Greenhalgh's claim that a document with wrist watches existed as of November 2006.
[4] As we hold that the DOC fully complied with Greenhalgh's PRA request, we do not reach his statute of limitations arguments, nor do we award attorney fees and penalties under RCW 42.56.550(4).