# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| DONALD HERRICK, | No.  50364-6-II |
| Appellant, | |
| v. | |
| SPECIAL COMMITMENT CENTER, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Herrick, a resident at the Special Commitment Center (SCC),[1] made numerous Public Records Act[2] (PRA) requests to the SCC.  This case involves five such requests.  Herrick sued the SCC arguing that the SCC violated the PRA.  The trial court granted SCC's motion for summary judgment dismissal.

Herrick appeals, arguing that the SCC (1) imposed unreasonable cost and payment requirements for requests; (2) should not have combined his two records requests into one new request; (3) inadequately searched for records, namely New Arrival Profiles (NAPs) and certain meeting minutes, in response to his requests; and (4) did not timely respond to his requests.

---

[1]  The SCC is an entity within the Behavioral Health Administration of the Department of Social and Health Services.  *Special Commitment Center*, WASH. STATE DEP'T OF SOC. AND HEALTH SERVS. https://www.dshs.wa.gov/bha/special-commitment-center (last visited May 17, 2019).

[2] Chapter 42.56 RCW.

We hold that the SCC (1) did not violate the PRA as to costs and payment requirements for requests; (2) did not violate the PRA by combining requests; (3) adequately searched for the meeting minutes request, but did not show it adequately searched beyond a material doubt as to the NAPs; and (4) did not violate the timeliness requirements of the PRA. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

FACTS

Herrick is a resident at the SCC. At issue in this appeal are Herrick's five PRA requests to the SCC: 201407-PRR-677, 201408-PRR-67, 201410-PRR-927, 201408-PRR-720, and 201509-PRR-817.[3]

At the time of Herrick's requests, Cheryl Medina was the SCC's Public Disclosure Officer tasked with responding to PRA requests, Amy Mosley was an SCC administrative assistant, and Kyle Ghan was an SCC resident advocate, who spoke with Medina and Mosley about Herrick's various record requests.

I. REQUESTS PRR-677, PRR-67, PRR-927, AND PRR-817

On July 22, 2014, the SCC received a PRA request from Herrick enumerated PRR-677. Herrick requested, "All New Arrival Profiles (NAPs), or the equivalent, from 1990 to the present [July 2014], for every resident ever processed under 71.09 regardless of petition status or current residency." Clerk's Papers (CP) at 237 (italics omitted). A NAP is a document drafted by SCC clinicians to give staff an idea of the resident's criminal and institutional histories, and medical or behavioral concerns. According to Dr. Carole DeMarco, an SCC psychologist, a NAP is

_____

[3] For clarity, we refer to the public records requests by their abbreviated tracking numbers "PRR-677," "PRR-67," "PRR-927," "PRR-720," and "PRR-817" respectively.

2

completed for each new admission to the SCC. Dr. DeMarco explained, "When the NAP is completed, it is placed in a separate folder with all of the other NAPs. After the resident is admitted to SCC, a folder is established in the Records Department for that resident, and the NAP is placed in the resident's folder." CP at 131. At the time of Herrick's requests, the SCC had processed over 430 residents over the course of its existence.

On August 5, 2014, the SCC received a PRA request from Herrick enumerated PRR-67. Herrick requested various records pertaining to the Joint Forensics Unit (JFU) of which the SCC was a participant.

Herrick received initial responses to his requests within five days and was provided time estimates to locate and copy the requested records. After responsive records were located, Herrick received billing letters that notified him of the quantity of records as well as the cost to reproduce them. Herrick was told that his PRR-677 request garnered 449 pages of documents and would cost $29.95 to put onto a CD, and that his PRR-67 request garnered 251 pages of documents and would cost $48.41 to create print copies. The letters stated that if Herrick did not pay the amounts listed within ten business days, the SCC would deem that he no longer wanted the records and it would close the request as abandoned.[4] The SCC did not receive any payment from Herrick regarding these two requests within the time expressed.

On October 29, 2014, Medina received an e-mail from Richard Podriznik, a paralegal at the law firm representing Herrick on another matter. Podriznik asked to be invoiced via letter for PRR-677 and PRR-67. Based on this e-mail, Medina opened a new request for Podriznik,

---

[4] Because the SCC received a substantial number of requests for which it never received payment, Medina did not begin tasks associated with production, such as redaction, until the fee was paid.

enumerated PRR-927. PRR-927 incorporated PRR-677 and PRR-67. The SCC sent Podriznik a letter describing the records responsive to his request and the amount due within 10 business days. Although the SCC did not receive payment within the time expressed, it eventually received Podriznik's payment. On December 9, Medina e-mailed Podriznik to confirm her receipt of payment and state that the records being requested would require a lot of redactions that would take "a while." CP at 260. Podriznik responded, "No worries, Cheryl—it's the holidays, and we all need to chill." CP at 260.

A week later, Podriznik e-mailed Medina to ask if she had sent the invoices for the disclosure requests. Podriznik stated that he thought she had sent them, but he could not find them. Medina confirmed that she had sent Podriznik a bill. Podriznik stated, "I even remember doing [an] expenditure request, but I have no record of [doing] it . . . I will go ahead and do a new one just in case."[5] CP at 268.

About a month later, Herrick sent a letter to the SCC inquiring about the status of "his" PRR-927 request, explaining that PRR-927 was "consolidated previously from []PRR-677 and []PRR-67." CP at 275. In a letter to Herrick, Medina responded that PRR-927 consolidated PRR-677 and PRR-67 at Podriznik's request and explained that once payment was received, she would begin redacting the documents, and would send them to Podriznik upon completion.

In February 2015, Podriznik and Medina confirmed that payment had been received for the request, and Medina mailed Podriznik the disc with content related to PRR-67, the JFU requests. Medina continued to work on the NAP redactions. In May, Medina sent Herrick a

---

[5] It appears the SCC, based on this e-mail, cancelled Podriznik's payment it had already received and waited for a new payment.

letter explaining that documents responsive to PRR-67 were sent to Podriznik, and that

documents pertaining to PRR-677 were still being redacted. On June 10, Medina mailed a CD

containing the NAPs to Podriznik, along with a letter stating that she completed the redactions

and considered PRR-927 closed.[6]

Medina provided a declaration regarding her search processes for the NAPs. Medina

stated:

> With respect to request number 201410-PRR-927 (and the original 201407-PRR-677), I produced all of the New Arrival Profiles (NAPs) to Mr. Podriznik that were responsive to the original PRR-677 request. I know that I produced all of the responsive NAPs because there is a folder on the SCC intranet that contains a copy of all the NAPs, and I produced all of the NAPs that in that folder had been created as of the date of Mr. Herrick's request (July 14, 2014). There was also a list that I checked to verify that I had them all; when I checked the list, I found two NAPs were missing from the folder. I sought out and found those two missing NAPs, eventually obtaining them from Dr. Carole DeMarco.

CP at 226.

Herrick compiled a chart comparing an SCC resident list against the NAPs provided from

PRR-927. The chart illustrated that the SCC did not provide Herrick with NAPs for more than

80 (out of 436) residents. The chart also illustrated that the SCC provided Herrick with over 70

duplicative NAPs.

Herrick submitted a supplemental request, PRR-817, that updated his request for the

NAPs. This request sought NAPs from July 1, 2014 to September 22, 2015, the date of PRR-

817. Herrick received a five day letter and was eventually notified of responsive records and the

---

[6] The record on appeal does not contain the records produced for PRR- 677, PRR-67, or PRR-927.

cost of copies. Although Herrick failed to tender payment within ten business days, when the SCC received the belated payment, it sent the records and considered the request closed.

## II. REQUEST PRR-720

On August 25, 2014, the SCC received Herrick's PRA request for several additional records, including copies of "all unit sign up [sic] sheets and the unit meeting minutes for Alder unit from Dec. 2012 to [August 22, 2014]." CP at 144. This PRA request was assigned PRR-720. Medina sent Herrick an initial response to his requests within five days and provided time estimates to locate the requested records. Medina then sent a letter regarding a small number of responsive documents to Herrick's requests in PRR-720, and Herrick paid for and was sent these responsive documents. However, Medina sent a letter stating the search did not uncover any Alder meeting minutes. Herrick replied that he believed records of the Alder meeting minutes existed.

> In a declaration regarding the search for the Alder meeting minutes, Medina states:
>
> When I initially received the request, with respect to the meeting minutes and signup sheets, I first looked in the place where they were supposed to be kept. There is a folder on the SCC Intranet for this purpose in which all meeting minutes are to be kept. This folder holds the minutes from all the meetings that occur at the SCC and contains a number of subfolders specific to the various types of meetings. With respect to the community meetings that Mr. Herrick had inquired about, there is a subfolder labeled "Community TCF" and within that there is another subfolder for each of the three Program Areas. Because Alder unit is on Program Area One, I looked in the subfolder labeled "PA-1." When I looked in it, I found this folder did not contain any minutes or signup sheets that were responsive to PRR-720. I looked in other folders that I thought might contain them, but did not find any records responsive to Mr. Herrick's request.

CP at 226-27. Medina then contacted Mosley and Ghan to assist in finding the requested records. In her declaration, Mosley states:

> When I originally received the email from Ms. Medina, I looked through all of the meeting minutes on the SCC Intranet, in my office, and in the physical file cabinets in both Program Area One and Program Area Two due to the fact that Resident Herrick had been transferred between the two Program Areas. I spent over a month looking everywhere I could think of for minutes or sign-up sheets that I could not locate on the SCC Intranet. I searched for records in the places likely to contain those records and followed obvious leads as they arose. At all times, I conducted my search and instruction to others to search for responsive records in good faith with due diligence.
>
> . . . I was able to find a few copies of responsive minutes, but not many. What I did locate was copied or emailed to the Records Department. I was not surprised that the documents in question were difficult to find, because both Program Area One and Program Area Two experienced a high rate of administrative staff turnover during that period. There were sometimes months between a vacancy and a new hire. If there was not an assigned Program Area Manager to conduct the community meetings, Residential and Security staff would either run the meetings or they would be canceled.

CP at 134. The SCC produced four pages of meeting minutes responsive to PRR-720.

In a later discovery request in other litigation, Herrick again requested Alder meeting minutes, this time suggesting a location for the documents. The SCC then found four new documents that would have been responsive to the PRR-720 request, along with other documents outside the request, and provided these documents to Herrick.

Herrick brought a complaint alleging various PRA violations regarding the five requests. Following discovery in this case, the SCC moved for summary judgment dismissal. The trial court granted the SCC's motion, dismissing all of Herrick's claims. Herrick appeals.

ANALYSIS

Herrick argues that summary judgment dismissal was improper because the SCC violated the PRA by (1) imposing unreasonable costs and payment requirements for his requests, (2) combining PRR-677 and PRR-67 into PRR-927, (3) inadequately searching for records in

7

response to his NAPs and Alder meeting minutes requests, and (4) failing to timely respond to his requests.[7]

We hold that the SCC (1) did not violate the PRA as to costs and payment requirements for the requests; (2) did not violate the PRA when combining the requests; (3) adequately searched for the Alder meeting minutes request, but has not shown beyond a material doubt that it adequately searched for the NAP requests; and (4) did not violate the timeliness requirements of the PRA.[8]

A.    *Legal Principles*

We review a trial court's order granting summary judgment de novo. *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Greenhalgh*, 160 Wn. App. at 714. In reviewing whether summary judgment was proper, we view all facts and reasonable inferences in a light most favorable to the nonmoving party. *Greenhalgh*, 160 Wn. App. at 714. Mere allegations, argumentative assertions, or conclusive statements do not raise issues of material fact sufficient to preclude a grant of summary judgment. *Greenhalgh*, 160 Wn. App. at 714.

---

[7] The State argues that because two issues, unreasonable costs and the updated NAPs request, PRR-817, were not pleaded in the complaint, we cannot consider them. However, both issues were before the trial court during motions in support of and in opposition to summary judgment. As such, we address Herrick's unreasonable costs and PRR-817 arguments. RAP 9.12.

[8] To the extent the trial court ruled that Herrick did not state a claim under the PRA for any of his claims in his complaint, we hold that the trial court erred. The procedural posture of this case is not a CR 12(b)(6) motion, but rather a motion for summary judgment dismissal.

The PRA is a strongly worded mandate for the broad disclosure of public records. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Its purpose is to increase governmental transparency and accountability by making public records accessible to Washington's citizens. *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). The PRA must be liberally construed to promote the public interest. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007); RCW 42.56.030. We review agency actions under the PRA de novo. *John Doe A*, 185 Wn.2d at 371; RCW 42.56.550(3).

B.      *Costs and Payment Requirements*

Herrick argues that the SCC's cost and time of payment requirements are "demonstrably unreasonable" under the PRA. We disagree.

Regarding Herrick's payment deadline argument, the PRA requires agencies to adopt and enforce reasonable rules. RCW 42.56.100. The SCC has informally adopted a rule that requires a requestor to provide payment for responsive documents within ten business days or the request will be considered abandoned. However, the facts here show that the SCC did not deny the requests because payment was not received within ten business days. Herrick's and Podriznik's payments for PRR-927, PRR-720, and PRR-817 all missed the ten day deadline. However, when payment was eventually received, the SCC processed the requests. Under these facts, this payment requirement does not violate the PRA. As a result, the SCC did not violate the PRA with its payment requirement.[9]

_____

[9] Herrick seems to argue that the SCC's lagging internal procedures regarding residents' fund transfer requests preclude him from meeting the ten-business-day payment requirements. However, none of Herrick's requests to transfer funds in the record show he timely placed his request before the payment deadline expired. Further, none of Herrick's requests were denied based on noncompliance with the payment requirements. We do not address this argument.

Regarding Herrick's argument that the SCC's costs were unreasonable, the PRA allows agencies to charge for the actual costs and to promulgate rules to that effect. RCW 42.56.070, .120. The SCC has promulgated a rule regarding costs. WAC 388-880-150(3). The WAC states that, for paper copies, the SCC charges 15 cents per single-sided page or 30 cents for double-sided pages, plus the actual cost of the mailing container and postage. WAC 388-880-150(3)(a). For electronic copies:

> PDF [(portable document format)] or TIFF [(tagged image file format)] type copies of SCC records may be provided when appropriate at the cost of fifty dollars per hour or thirteen cents per page, in the native format, plus cost of media, mailing container and postage. When charged an hourly rate, it shall be prorated based on the actual time used to scan the documents and transfer them to electronic media. Due to privacy and security concerns when exemptions apply to any part of the information provided, copies of electronic records must normally be provided in PDF or similar format.

WAC 388-880-150(3)(b).

Herrick argues that the cost of $29.95 for 449 pages of NAPs to be placed on a CD was unreasonable because Medina only copied a folder. Herrick does not argue how the SCC's costs for records do not comply with the PRA or how the PRA's statutory language regarding costs is impermissible. Further, beyond his personal belief that the costs of obtaining the records is too high, Herrick does not support how $29.95 for 449 pages of records on a CD would be unreasonable. Mere allegations, argumentative assertions, or conclusive statements do not raise issues of material fact sufficient to preclude a grant of summary judgment. *Greenhalgh*, 160 Wn. App. at 714. As a result, Herrick does not raise issues regarding costs sufficient to overcome a grant of summary judgment. Accordingly, Herrick's arguments regarding costs and payment for records arguments fail.

C.      *Consolidating PRR-67 and PRR-677 into PRR-927*

Herrick argues that the SCC should not have consolidated his PRR-677 and PRR-67 into Podriznik's PRR-927. Herrick argues that the SCC's confusion does not justify abandoning his initial requests. He contends that the SCC has an obligation under the PRA to communicate with the requestor and seek clarity when necessary. He argues that the lack of communication led the SCC to improperly abandon PRR-677 and PRR-67 and roll those requests into PRR-927, a request he contends Podriznik never made. We hold that the SCC did not violate the PRA when it consolidated PRR-677 and PRR-67 into PRR-927.

If an agency receives a request that is unclear, the agency may seek clarification from the requestor regarding the request. RCW 42.56.520(3)(a). Conversely, if an agency is "unclear about *what was requested*, it [is] required to seek clarification." *Neighborhood All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 727, 261 P.3d 119 (2011) (emphasis added).

Under the PRA, agencies must adopt rules that "provide for the fullest assistance to inquirers and the most timely possible action on requests for information" but still "prevent excessive interference with other essential functions of the agency." RCW 42.56.100. The SCC promulgated a rule stating that a PRA request to the SCC should provide the requestor's name and address, state that the request is for public records, and identify the specific records requested. WAC 388-880-150(1)(a).

Here, the SCC considered Herrick's PRR-677 and PRR-67 requests administratively closed for nonpayment. Then, Herrick's legal team contacted the SCC to pay the costs of the requests. When Podriznik e-mailed Medina for an invoice for PRR-677 and PRR-67, Medina created the new request, PRR-927.

11

The SCC's decision to open a new request, instead of reviving abandoned requests, did not violate the PRA. Podriznik's e-mail to Medina supplied his name and address, stated his message was about public records, and identified the records through their assigned request designations, PRR-677 and PRR-67. The e-mail contained all the necessary components of a new PRA request. PRR-677 and PRR-67, the requests Podriznik's e-mail referenced, were closed for nonpayment. Although the SCC could have sought clarification from Podriznik regarding his request, the PRA does not require this, because what was being requested was clear. RCW 42.56.520(3)(a). Instead, as was the case here, the SCC reasonably determined Podriznik was making a new PRA request. Accordingly, we hold that the SCC's consolidation of PRR-677 and PRR-67 into PRR-927 did not violate the PRA.[10]

D.      *Adequate Search under the PRA*

Herrick argues that the SCC inadequately searched for the NAPs and the Alder meeting requests. We hold that although the SCC's search for the Alder meeting minutes was adequate, there is a question of material fact regarding the adequacy of the SCC's search for the NAPs.

The failure to adequately search for responsive documents is a violation of the PRA. *Neighborhood All.*, 172 Wn.2d at 721. A search for records pursuant to a PRA request must be "reasonably calculated to uncover all relevant documents." *Neighborhood All.*, 172 Wn.2d at 720. Reasonableness is dependent on the facts of each case. *Neighborhood All.*, 172 Wn.2d at 720. An agency is not required to search every possible place a record may conceivably be

_____

[10] Herrick also argues that the SCC should have sought clarification from him regarding the Alder meeting minutes in PRR-720. However, PRR-720 is not unclear as to what records were sought and the SCC understood what Herrick requested regarding the Alder meeting minutes. Herrick's argument is essentially a restatement of his adequate search argument. We do not address Herrick's clarification argument, and we address his adequate search argument below.

stored, but only those places where a record is reasonably likely to be found. *Neighborhood All.*, 172 Wn.2d at 720. An agency cannot limit its search to only a single record system if there are other record systems where a record may likely be. *Neighborhood All.*, 172 Wn.2d at 720. Put another way, an agency must search more than one place if there are additional sources for requested information. *Neighborhood All.*, 172 Wn.2d at 720. However, an agency need not "search *every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found." *Neighborhood All.*, 172 Wn.2d at 720. Further, the mere fact that a record is eventually found does not itself establish the inadequacy of an agency's search. *Kozol v. Dep't of Corr.*, 192 Wn. App. 1, 8, 366 P.3d 933 (2015).

We conduct a fact specific inquiry to determine if a search is reasonable. *Neighborhood All.*, 172 Wn.2d at 720. We review the scope of the agency's search as a whole and whether that search was reasonable, not whether the requester has presented alternatives that he believes would have more accurately produced the records he requested. *Hobbs v. Wash. State Auditor's Office*, 183 Wn. App. 925, 944, 335 P.3d 1004 (2014). The issue of whether a search was reasonably calculated, and therefore adequate, is separate and apart from whether additional responsive documents exist but are not found. *Neighborhood All.*, 172 Wn.2d at 720.

On a motion for summary judgment, an agency bears the burden of showing its search was adequate beyond material doubt. *Neighborhood All.*, 172 Wn.2d at 721. To prove that its search was adequate, the agency may rely on reasonably detailed, nonconclusory affidavits from its employees submitted in good faith. *Neighborhood All.*, 172 Wn.2d at 721. The affidavits "should include the search terms and the type of search performed, and they should establish that

all places likely to contain responsive materials were searched." *Neighborhood All.*, 172 Wn.2d at 721.

1.      *Summary Judgment was Improper for Requests Regarding NAPs*

Herrick argues that the search for the NAPs was inadequate. He argues that once SCC realized all NAPs were not in the intranet folder, and because SCC knew that a copy of each NAP was in each resident's clinical folder, the SCC had an obligation to get the missing NAPs individually. We hold that there is a material doubt regarding the adequacy of the search for the NAPs.

Herrick requested, "All New Arrival Profiles (NAPs), or the equivalent, from 1990 to [July, 2014], for every resident ever processed under 71.09 regardless of petition status or current residency." CP at 237. Multiple declarations detail the SCC's process for searching for NAPs. Dr. DeMarco's declaration stated, "A New Admission Profile is done when there is a new admission to the SCC." CP at 130. Further, "When the NAP is completed, it is placed in a separate folder with all of the other NAPs. After the resident is admitted to SCC, a folder is established in the Records Department for that resident, and the NAP is placed in the resident's folder." CP at 131. Medina stated that she produced all NAPs. She copied all the NAPs in the NAP folder on the SCC intranet and compared this to another list of NAPs. After discovering two were missing, she sought them out and produced them for the request.

Herrick, in his reply to the SCC's motion for summary judgment, provided an exhibit that purported to compare a master list of 436 SCC residents against the NAPs produced from PRR-

927. His exhibit appeared to show that over 80 NAPs were not provided, but that over 70 duplicative NAPs were provided.[11]

The SCC must search those places where a record is reasonably likely to be found and cannot limit its search to only a single record system if there are other record systems where a record may likely be. *See Neighborhood All.*, 172 Wn.2d at 720. Medina searched and produced all the NAPs in the NAPs intranet folder. She examined these NAPs against another list, realized two were missing, and then produced those two missing documents. According to Dr. DeMarco, every resident upon admission receives a NAP, and each admitted resident has a folder in the records department that contains their NAP. The list Medina used to check her search could have been a list for resident folders, but her declaration lacks clarity on the list that was utilized. As a result, taking the evidence in a light most favorable to Herrick, there could have been a record system, the resident folders, that was seemingly not searched for PRR-927 or PRR-817. Dr. DeMarco's declaration shows that NAPs are reasonably likely, if not certainly, in the resident folders.

Viewing the evidence in a light most favorable to Herrick, the nonmoving party, Herrick's exhibit, alongside Medina's and Dr. DeMarco's declarations, Herrick has shown that a portion of the NAPs were excluded from the documents provided. Further, he has shown that the SCC seemingly did not search a record system where the NAPs were reasonably likely to be located. The SCC has not shown its search was adequate beyond material doubt. As a result, we reverse the trial court's grant of summary judgment on the NAPs requests.

---

[11] We assume, for purposes of summary judgment, that this exhibit is correct. The duplication highlighted by the exhibit shows how Medina could have thought the NAP folder contained the correct number of NAPs, even though NAPs for several residents were missing.

2.      *SCC Adequately Searched for Request PRR-720*

Regarding PRR-720, Herrick argues that the SCC did not adequately search for the Alder meeting minutes.  We disagree.

The SCC relies on a number of affidavits to show it adequately searched for Herrick's requests.  Medina states that she began by looking in the folder containing all SCC meeting minutes and the specific subfolder where Alder meeting minutes should have been located.  In the subfolder, there were no records responsive to PRR-720.  Medina expanded her search to other folders that she thought might contain the Alder meeting minutes, but still found nothing.

Medina then contacted Mosley and Ghan to assist in finding the requested records. Mosley looked through all meeting minutes on the SCC intranet and searched physical file cabinets in multiple program areas.  Mosley spent over a month looking for responsive documents and expanding her search.  The responsive documents Mosley eventually located were sent to Medina.

Herrick argues that because he was provided some other Alder related documents during discovery for different litigation, the search was inadequate.  However, a search need not be perfect to be adequate, *Neighborhood All.*, 172 Wn.2d at 720, and the mere fact that a record is eventually found does not itself establish the inadequacy of an agency's search.  *Kozol*, 192 Wn. App. at 8.

Here, the SCC conducted an adequate search.  When the records were not located where Medina thought they should be, she expanded her search to other areas and contacted other individuals.  Based on her investigation, Mosley searched through additional electronic and physical record storage areas.  Mosley found responsive documents and they were provided to

Herrick. The SCC looked for records in places likely to contain them, expanded its search, continued to follow obvious leads as they arose, and produced documents as they were found.

We hold that the SCC conducted an adequate search for PRR-720.

E.    *The SCC Timely Produced Records*

Herrick also contests the timeliness of the SCC's responses to his requests. Specifically, Herrick complains that the SCC's redactions took too long. We disagree.

The PRA requires agencies to act promptly, within five business days of receiving a PRA request. RCW 42.56.520(1). Within that time frame, the agency may alert the requester that the request was received and provide a reasonable timeline for producing records responsive to the request. RCW 42.56.520(1)(c). However, the PRA does "not require an agency to comply with its own self-imposed deadlines as long as the agency was acting diligently in responding to the request in a reasonable and thorough manner." *Hobbs*, 183 Wn. App. at 940.

Herrick and Podriznik received the proper five day letters from the SCC. Herrick or Podriznik were kept informed of Medina's progress, and Podriznik specifically assured Medina that she need not rush the redactions. Herrick was also kept informed of the progress of his different requests. Because the SCC's responses to the requests complied with the PRA, Herrick's timeliness argument fails.

We affirm the trial court's summary judgment dismissal regarding the SCC's costs and payment requirements, its combining of PRR-677 and PRR-67 into PRR-927, the adequacy of its search for PRR-720, and its compliance with the PRA's timeliness requirements. We reverse regarding the summary judgment dismissal of Herrick's claim of an inadequate search for the NAPs. We remand for further proceedings.

No. 50364-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, A.C.J.

Cruser, J.