# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KIMBERLYN DOTSON, | No. 52561-5-II |
| Respondent, | |
| v. | |
| PIERCE COUNTY, acting through its PLANNING AND LAND SERVICES DEPARTMENT, a municipal corporation, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — In 2016, Kimberly Dotson made a request under the Public Records Act (PRA), chapter 42.56 RCW, to Pierce County. The County provided records to Dotson on an installment basis and, after providing Dotson with the requested documents, issued a letter closing the request.

The County later discovered an additional responsive record and provided it to Dotson. Dotson filed this action, contending that the County's actions in responding to her request violated the PRA. Dotson and the County filed cross motions for summary judgment. The trial court ruled that Dotson's action was untimely, and granted the County's motion for summary judgment. Because the trial court dismissed Dotson's claims, it did not address her motion for summary judgment.

Dotson appeals the order granting the County's motion for summary judgment dismissal of her claims. She also asks this court to grant her motion for summary judgment and hold that the County violated the PRA.

We affirm the trial court.

FACTS

I. FACTUAL HISTORY

A.     *The 2015 Complaint and 2016 Application*

In late 2015, environmental biologist Mary Van Haren was assigned to investigate a complaint regarding Dotson's property.  The complaint alleged that Dotson had built a paddock over a stream and shoveled dirt into the creek.

After viewing Dotson's property from the roadway, Van Haren retrieved a single document from an archived Planning and Land Services (PALS) application number 553137. This archived application concerned construction on the parcel adjacent to Dotson's property, and the single retrieved document was titled Critical Area Notice Fish and Wildlife Habitat Conservation Area/And Or Stream Buffer Notice and dated August 27, 2007.  The retrieved document was based on a habitat assessment report, which Van Haren did not review, and served as official identification and notice of an F1 type stream on the property adjacent to Dotson's.[1]

After utilizing the retrieved document for her review, Van Haren placed a copy of the document into the file concerning Dotson's violation.

On November 25, 2015, based on the retrieved document's identification of an F1 type stream on the property adjacent to Dotson, Van Haren notified Dotson of the complaint and a potential violation arising from the presence of a paddock, stall, and horse within 100 feet of an F1 stream.  Van Haren's letter advised Dotson to consider relocating the paddock, stall, and

---

[1] An F1 stream type includes water courses providing habitats for critical fish species.  Former PIERCE COUNTY CODE 18E.40.060 (2006).

horse; and suggested Dotson make an application for a Fish and Wildlife Habitat Water Type Verification and Farm Management Plan.

On March 17, 2016, Dotson submitted the suggested application. On May 4, Van Haren notified Dotson that she had completed the fish and wildlife habitat verification and approved the application. In that letter, Van Haren enclosed a document that read in part, "[b]ased on our research and site visit, a stream was identified within your parcel. This drainage course was typed as an F1 through application 553137 in the upstream parcel 0417066004." Clerk's Papers (CP) at 685. Van Haren also requested that Dotson sign and return an enclosed application document.

B.      *Dotson's PRA Request*

On May 18, 2016, Dotson, through counsel, submitted a PRA request to Sharon Predoehl, the public records officer for the County's PALS Department, requesting a copy of the following records:

> A copy of any and all records, correspondence, and documentation including Emails related to Kim Dotson, Parcel Number 04-17-06-2-010, Site Address: 5523 296th St E. Graham, WA concerning: applications, permits, enforcement, cease and desist, orders, complaints, communications with other agencies, communications with other departments, and or site visitations.

> Please search dates: January 2014 to the present.

CP at 844. Because the request was received after business hours, it was deemed received on May 19.

On May 20, Predoehl sent Dotson a "5-day" letter, via mail and fax, acknowledging receipt of the request and providing instructions on how to immediately access certain responsive records through the PALS website. In the letter, Predoehl also notified Dotson that "I have seven

requests ahead of yours, it will take me approximately 3-4 weeks to complete your request.  I will let you know if records are found before that date."  CP at 848.

Also on May 20, Predoehl began her search for responsive records.  After determining that the parcel number provided in the record request was incorrect, Predoehl identified the correct parcel number and added it to her search.  As part of her search, Predoehl reviewed the PALS permitting database and found an active code violation and active applications "concerning the parcels, addresses, and property owner."  CP at 798.  Due to the active violation and applications, Predoehl determined that resource management was most likely to have responsive records.

Predoehl then e-mailed the resource management supervisor, Kathleen Larrabee, a copy of the PRA request and a department record search form.  Larrabee determined that employees Dominique Senzig and Van Haren were most likely to have responsive records, due to Van Haren's previous work on the 2015 complaint regarding Dotson's property and Dotson's subsequent application for a Fish and Wildlife Habitat Water Type Verification and Farm Management Plan.  Predoehl also requested the Pierce County Information Technology Department perform a search for e-mails with the key terms of Dotson's name, the incorrect and correct parcel numbers, Dotson's address, and the violation number.

It is unclear when, precisely, Senzig and Van Haren provided Predoehl with their responsive documents.  In the course of gathering responsive documents, Van Haren did not consider that any records from the adjacent parcel's archived application were responsive because she had only retrieved and used a single document from that file when working on Dotson's violation and application, and that document was already in Dotson's file.

On May 27, Predoehl left for vacation. On June 17, Predoehl returned from vacation and reviewed the records produced through the e-mail search request.

On June 23, Predoehl e-mailed Dotson, notifying her of the application numbers that would allow her to retrieve records through the PALS website, and advising Dotson that she would upload three responsive files to Filelocker[2] later that day. The three files Predoehl uploaded contained, among other things, a large number of e-mails and the file PALS kept on Dotson's violation number 51105. The file on violation number 51105 included the partially redacted initial complaint against Dotson's property, the letters Van Haren had sent to Dotson, and the document Van Haren had retrieved from the neighboring parcel's archived application.

On June 28, Predoehl received read receipt e-mails confirming that the files had been downloaded from Filelocker. On June 29, Predoehl sent a letter to Dotson that stated in part:

> **Produced Records - Installment One**
> In my letter to you on May 20, 2016, I stated that we have public records available online at . . . . Parcel number 0417066001 has application numbers 832074 and 832073 which are related to this violation[.]
>
> **Produced Records - Installment Two**
> In my letter to you on June 23, 2016, I enclosed copies of screenshots from the Assessor-Treasurer, PALS online, and our PALS-database that show we have no responsive records for 0417062010 as it appears to be an invalid parcel number.
>
> **Produced Records - Installment Three**
> On June 23, 2016 I uploaded and sent you links to three separate files of responsive documents through Filelocker. On June 28, 2016 I received three emails from Filelocker stating you downloaded the files of responsive documents.
>
> As you have received responsive documents, I am closing your request.
>
> If you have any questions regarding this request, please contact me at (253) 798-3724.

---

[2] Filelocker is an electronic file transfer system that allows users to access files after providing a specific password.

CP at 805.

After the June 29 letter, Dotson did not contact Predoehl with questions regarding the produced records or amend her PRA request.

C.      *Public Records Produced on October 26, 2016, November 6, 2017, and March 2, 2018*

On October 25, 2016, while preparing for an October 26 administrative hearing regarding Dotson's land use violation, a PALS employee contacted Predoehl about a report he had discovered concerning Dotson's lobby visits. The report showed that Dotson had visited the PALS lobby on three occasions, two of which were in the date range of Dotson's PRA request. Prior to being contacted by the PALS employee, Predoehl was unaware that PALS maintained records of lobby visits.

On October 26, Predoehl sent the lobby visit record to Dotson by e-mail, along with a cover letter explaining that "[t]he record of these visits falls within the dates of the Public Records Request you submitted . . . ." CP at 771. That same day, Van Haren testified at Dotson's administrative hearing about her investigation of the complaint regarding Dotson's paddock, stall, and horse, and Van Haren's reliance on the document retrieved from the adjacent parcel's archived application to determine that the stream was an F1 type.

On October 25, 2017, Dotson filed a complaint regarding her 2016 request, alleging that the County violated the PRA. On November 6, while reviewing her records, Predoehl realized that two pages of responsive phone logs had not been produced to Dotson. The phone logs had been given to Predoehl during her initial search, but Predoehl had mistakenly not provided them to Dotson. Predoehl later stated in a declaration that she initially misfiled those two pages and then inadvertently overlooked them in her rush to produce the documents to Dotson. Predoehl

also noticed on November 6, that Dotson's PRA complaint mentioned a 2007 Habitat Assessment Report of the adjacent parcel. On November 7, Predoehl provided Dotson with the phone logs and a copy of the 2007 Habitat Assessment Report.

On March 2, 2018, Predoehl reviewed a copy of Dotson's motion for summary judgment and saw many mentions of the adjacent parcel and application number 553137. Van Haren was not available for Predoehl to consult with to determine if any records from application 553137 for the adjacent parcel were responsive, so "to show good faith and out of an abundance of caution," Predoehl hand delivered a CD containing all records pertaining to application 553137. CP at 808. Later, after Van Haren returned to the office from vacation, Van Haren notified Predoehl that she had not used any of the documents from application 553137, aside from the one previously provided, when working on Dotson's case.

## II. PROCEDURAL HISTORY

Dotson's complaint alleged that the County violated the PRA by failing to undertake an adequate search, not disclosing all responsive records, not identifying exempt records with particularity, and failing to identify a specific date by which it would respond to Dotson's PRA request. Dotson requested that the trial court (1) find that the County improperly withheld public records, (2) order the County to produce the improperly withheld records, (3) require the County produce other unidentified public records, (4) require the County to pay a monetary penalty, (5) award Dotson attorney's fees, and (6) award any other relief the trial court found just.

Both parties filed motions for summary judgment. The County sought dismissal of Dotson's claims, arguing that her lawsuit was untimely filed. Dotson sought summary judgment that the County had violated the PRA. At the hearing on the motions for summary judgment, the

trial court asked the parties for their consent to treat the hearing as a decision on the merits,

rather than proceed under a summary judgment standard. The parties agreed.

The court then explained that it was bifurcating the hearing and that it was ruling on the

statute of limitations issue first. The trial court stated:

> And so what I would like to do next is—there are two layers of issues here. There is the statute of limitations issue and then there is the underlying, well, the rest of the merits let's say. And so given that we would need to pass through that first hurdle of the statute of limitations, I would like to bifurcate this argument, and then we will hear argument solely on the statute of limitations issue, which is interesting and unique in these circumstances, at least from this Court's perspective, and warrants individualized attention in terms of back-and-forth in that sense. And then I will rule on that, and then contingent upon that ruling, we will then get to the merits that remain other than the statute of limitations.

Verbatim Report of Proceedings (VRP) at 4.

During the argument regarding the statute of limitations, the trial court questioned

Dotson's counsel as to when the PRA action accrued, including the following exchange:

> THE COURT: When could you have brought this lawsuit in the first instance? When was it ripe for you to bring?
>
> [DOTSON]: It could have been brought under June 23rd—a year from June 23rd, but when the County issued its next installment, it's clearly an installment that was responsive to this request. That extended—that brought the—that made a new bright line under the statutory prong of [RCW 42.56.550(6).]

VRP at 18-19.

Dotson never argued equitable tolling in the trial court. The County raised the issue in its

briefing and at the hearing. At the hearing, the trial court asked Dotson if equitable tolling would

apply, but she responded that "we don't even need to get to that in this case." VRP at 16. After

Dotson concluded her argument, which did not raise equitable tolling, the trial court asked

Dotson if she had anything else to discuss and she responded that she did not.

When making its ruling, the trial court noted that the parties disputed the meaning of "partial or installment basis," and it relied on the use of that term in RCW 42.56.080(2), which it found

> makes it clear that a partial or installment basis is what was commonly understood by that term which is when you have a larger group of records that you need to prepare and gather and you know at the outset it's going to take time to gather and collect them, and then you turn them over in installments with a closing letter when you're done producing those installments. That is what happened in this case. We had installments that were produced and then a closing letter, and at that point the claim accrued.

VRP (Ruling of the Court) at 4. The court also noted that there were no facts to support concerns of "gamesmanship" by the County in this case and no facts to support equitable tolling. VRP (Ruling of the Court) at 5.

The trial court ruled that Dotson's action was barred by the statute of limitations. The trial court then issued a standard order granting summary judgment that makes no mention of a motion on the merits. The trial court neither heard arguments nor entered an order regarding Dotson's motion for summary judgment.

Dotson appeals the order granting the County's motion for summary judgment dismissal of her claims. She also argues that this court should hold that the County violated the PRA, effectively asking this court to make an initial ruling on her motion for summary judgment.

ANALYSIS

I. FILE NUMBER 553137

As an initial matter, Dotson argues throughout her brief that the County violated the PRA by not disclosing documents from file number 553137, that pertain to the adjacent property. But these documents are not responsive to Dotson's request.

Dotson's request clearly asked for records concerning applications, permits, enforcement, etc. for her parcel. When investigating Dotson's land use violation, Van Haren accessed one document from an archived application on an adjacent parcel, which officially recorded the existence of an F1 type stream on a parcel adjacent to Dotson's, and placed a copy of that document in Dotson's file. That archived application is file number 553137.

Dotson argues that additional documents from file number 553137 were responsive to her request because they were "repeatedly referenced in [the County's] land use enforcement proceedings" and "[c]ounty [s]taff testified expressly that they relied on exactly these records in their enforcement action." Br. of Appellant at 17, 33-34. But our review of the administrative hearing records show that Van Haren, who was the only person to testify at the administrative hearing, explicitly testified that she did not look at other materials used to make the determination of an F1 type stream.

Additionally, the County argues that the doctrine of issue preclusion prevents relitigation of this argument. We agree.

Issue preclusion applies if (1) the issue decided in the earlier proceeding was identical to the issue in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom issue preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) the application of issue preclusion does not cause an injustice against the party whom it is applied. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004).

The issue of whether Van Haren's declaration conflicts with her testimony offered at the administrative hearing was previously before this court on a RAP 9.11(a) motion for additional

evidence. Ruling Den. Motion, *State v. Dotson*, No 50860-5-II, at 3 (Wash. Ct. App. Aug. 7, 2018), There Dotson claimed that Van Haren's declaration conflicted with her testimony at the administrative hearing, and sought to admit Van Haren's declaration as additional evidence to impeach Van Haren in her appeal of the administrative decision. A commissioner of this court declined to allow admission of the declaration as additional evidence, holding that "Van Haren's testimony and her declaration are not in conflict." Br. of Resp't, App. 1 at 2. Then the appeal was decided on the merits against Dotson. *Dotson*,, No. 50860-5-II, slip op. at 1, *review denied*, 193 Wn.2d 1014 (2019).

The issue decided in the prior proceeding is identical to the issue in the later proceeding; the earlier proceeding ended in a judgment on the merits; the party against whom issue preclusion was asserted was a party to the earlier proceeding; and the application of issue preclusion does not cause an injustice. Thus, in addition to our independent review of the record that shows that Van Haren's testimony and her declaration are not in conflict, we hold that issue preclusion prohibits Dotson from advancing this argument.

Because the County did not consider any documents from file number 553137, these records are not responsive to Dotson's PRA request. And Dotson is precluded from arguing this issue because it was previously litigated. Accordingly, we disregard all of Dotson's arguments that are based on the County's failure to produce file number 553137.

## II. LEGAL PRINCIPLES AND STANDARDS OF REVIEW

The PRA is a strongly worded mandate for broad disclosure of public records. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). It requires governmental agencies to "make available for public inspection and copying all public records,

unless the record falls within specific exemptions." *Rental Housing Association of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 535, 199 P.3d 393 (2009) (quoting RCW 42.56.070.)

The PRA exists to increase governmental transparency and accountability by allowing Washington's citizens access to public records. *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). The PRA mandates that its provisions "shall be liberally construed" to promote full access to public records. RCW 42.56.030. We review questions of statutory interpretation and challenges to agency actions under the PRA de novo. *Associated Press v. Washington State Legislature*, 194 Wn.2d 915, 920, 454 P.3d 93 (2019) (plurality opinion); RCW 42.56.550(3).

When a citizen requests public records under the PRA, the agency in question has only five days to make one of the following responses: (1) provide the records, (2) acknowledge receipt of the request and provide a reasonable estimate of the time the agency will require to respond, (3) ask for more time or clarification, or (4) deny the request along with a proper claim of exemption. RCW 42.56.520, .210(3). If an agency fails to fully comply with a request under the PRA, the requestor may bring an action against the agency. RCW 42.56.550.

Summary judgment is appropriate only where, after viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and when the moving party is entitled to a judgement as a matter of law. CR 56; *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). Here, there are no material facts in dispute. We

review summary judgment orders de novo, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Associated Press*, 194 Wn.2d at 920.[3]

The primary issue here involves interpretation of the PRA's statute of limitations. RCW 42.56.550(6) provides that actions must be filed "within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." As discussed in more detail below, our Supreme Court has held that this statute of limitations usually begins to run on an agency's "final, definitive response" to a PRA request. *Belenski v. Jefferson County*, 186 Wn.2d 452, 460, 378 P.3d 176 (2016). Thus, this case turns on whether the County's June 29, 2016 letter stating, "As you have received responsive documents, I am closing your request," comprises such a final, definitive response. CP at 805.

### III. ANALYSIS

A.     *The Trial Court Correctly Determined that Dotson's Action Was Time-Barred*

Dotson argues that the trial court erred by granting the County's motion for summary judgment because her action was timely filed. We disagree and hold that Dotson's action was time-barred.

---

[3] The parties dispute whether the facts should be interpreted in Dotson's favor. Dotson contends that, under the summary judgment standard, the facts should be construed in the light most favorable to her, as the nonprevailing party. The County disagrees, arguing that because, at the hearing, the parties agreed to proceed on the merits rather than the summary judgment standard, the facts should not be construed in Dotson's favor. In this case, the parties both filed for summary judgment, and despite a brief conversation at the hearing regarding whether the court would consider this as a hearing on the merits, the trial court issued an "Order Granting Pierce County's Motion for Summary Judgment" "pursuant to Civil Rule 56." CP at 785-86. Accordingly, we apply the summary judgment standards here.

1. *The Trial Court Did Not Err by Ruling that the Statute of Limitations Began To Run in June 2016*

Dotson argues that the trial court erred by finding that the statute of limitations began to run on the date of the County's closing letter, rather than the date the County released additional records. Specifically, Dotson contends that the County's last installment of responsive records was produced on October 26, 2016,[4] and her action was timely filed on October 25, 2017. Dotson contends that the PRA makes no mention of closing letters as an event that triggers the statute of limitations and that the trial court's ruling is contrary to the plain language of RCW 42.56.550(6).[5] We disagree with Dotson.

RCW 42.56.550(6) requires that "[a]ctions under this section must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." Our Supreme Court has held that this section reveals the legislature's intent to impose a one year statute of limitations "beginning on an agency's final, definitive response to a public records request." *Belenski*, 186 Wn.2d at 460.

In *Belenski*, Jefferson County erroneously claimed that it had no records responsive to a public records request. 186 Wn.2d at 455. The trial court found that the statute of limitations began running at the time of the county's "definitive, final response," regardless of whether its claim to have no responsive records "was truthful or correct." 186 Wn.2d at 461.

---

[4] Throughout Dotson's briefing, she occasionally stretches this date to include the documents produced on November 6, 2017 and March 2, 2018.

[5] Dotson also argues that the trial court erred by determining that existing law does not address the facts of this case. Dotson bases this allegation of error on an oral statement made by the trial court. This issue is insufficiently briefed for us to consider. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(a)(6).

The county's answer that no responsive records existed was sufficient to put the requester on notice that the county "did not intend to disclose records or further address this request." 186 Wn.2d at 461. If the requester "was unsatisfied with this answer," he was able to sue as soon as he received this response, with "no need for him to wait . . . before bringing his cause of action." 186 Wn.2d at 461. The court remanded to allow the trial court to determine whether, under the particular facts of the case, the doctrine of equitable tolling should apply. 186 Wn.2d at 462.

Dotson's argument mischaracterizes *Belenski*, arguing that it only controls where RCW 42.56.550(6) does not clearly apply, or in cases where the responding agency claimed it had no records, and that it has "no bearing on present facts at all." Reply Br. of Appellant at 8. The court in *Belenski* explicitly found that the one year statute of limitations for claims under the PRA, arising from RCW 42.56.550(6), "begins to run on an agency's definitive, final response to a PRA request." 186 Wn.2d at 457.[6]

Here, the County completed its records production on June 29, 2016, saying, "As you have received responsive documents, I am closing your request." CP at 805. This action comprised a final, definitive response to Dotson's request, and started the statute of limitations. The trial court also noted that there were no facts to support concerns of "gamesmanship" by the County, a statement supported by our review of the record on appeal. There is no indication that the closing language chosen by the County in its June 29 letter was intended to do anything but

---

[6] We note that our decision is in accord with Division One of this court's unpublished decision in *Strickland v. Pierce County*. 2 Wn. App. 2nd 1018 (2018). Division One has also held that the production of an exemption log and closing letter amounted to a final, definitive agency response, and "[t]he fact that a few responsive documents turned up later does not change this result." *Strickland*, 2 Wn. App. 2nd at *5.

to alert Dotson that there would be no forthcoming documents.[7]  Dotson did not file her complaint until October 25, 2017.  Because Dotson filed her action more than one year after the County's final, definitive response, her action was untimely.  The trial court's ruling is consistent with the "definitive, final response" doctrine established in *Belenski*, and thus, the trial court did not err in granting the County's motion for summary judgment.

       2.  *The Discovery Rule Does Not Apply in PRA Cases*

Dotson also argues that the statute of limitations began to run on October 26, 2016, when she discovered that the County had allegedly not disclosed responsive records.[8]  We reject Dotson's attempt to apply the discovery rule to her PRA action.

"Under the discovery rule, a cause of action accrues when the plaintiff knew or should have known the essential elements of the cause of action."  *Allen v. State*, 118 Wn.2d 753, 757-58, 826 P.2d 200 (1992).  The discovery rule generally applies in cases where "the statute does not specify a time at which the cause of action accrues."  *Douchette v. Bethel School Dist. No. 403*, 117 Wn.2d 805, 813, 818 P.2d 1362 (1991).  However, the PRA statute of limitations contains triggering events that enable a requester to know that a cause of action has accrued, and the legislature enacted no discovery rule exception.[9]  And Dotson cites no authority for applying

---

[7] As in *Belenski*, the County's language in the June 29 letter here "was sufficient" to put Dotson "on notice that the County did not intend to disclose records or further address [the] request." 186 Wn.2d at 461.

[8] Dotson's counsel disagrees that she admitted that Dotson could have brought her suit beginning July 29, 2016.  This is contrary to the verbatim report of proceedings.

[9] As mentioned above, the PRA statute of limitations is triggered when an agency claims exemption or concludes production of records on a partial or installment basis.  RCW 42.56.550(6).

the discovery rule to PRA actions that, as interpreted in *Belenski*, arise under a statute that specifies the statute of limitations begins to run at the time of the agency's "final, definitive response." 186 Wn.2d at 461. We hold that the statute of limitations began to run in June 2019.

3. *Dotson Waived Equitable Tolling by Failing To Raise the Argument at the Trial Court*

Lastly, Dotson argues that, if we hold that the statute of limitations began to run in June 2019, we should apply the doctrine of equitable tolling to preserve her cause of action. We hold that Dotson waived this argument.

At the trial court, the County raised the issue of equitable tolling in briefing and at the hearing. At the hearing, when the trial court directly asked Dotson whether equitable tolling would apply, Dotson told the court that it did not need to consider equitable tolling. After Dotson concluded her argument, the trial court asked Dotson if she had anything further, and Dotson stated that she did not. By declining to argue equitable tolling when given the opportunity, Dotson waived this argument on review.

B. *Attorney Fees*

Dotson requests attorney fees, costs, and expenses for this appeal under RAP 18.1 and RCW 42.56.550(4). RCW 42.56.550(4) provides "all costs, including reasonable attorney fees, incurred in connection with such legal action," to the party who prevails against an agency in a PRA claim. This includes attorney fees incurred on appeal. *Sargent v. Seattle Police Dept.*, 179

No. 52561-5-II

Wn.2d 376, 402, 314 P.3d 1093 (2013). Because the statute of limitations bars Dotson's claims,

she is not the prevailing party. Accordingly, she is not entitled to attorney fees.

We affirm.

_____
Worswick, J.

_____
Lee, C.J.

_____
Melnick, J.